In the Matter of the Construction of the Will of FREDERICK L. UPJOHN, Deceased. ALICE E. C. LAKE et al., Appellants; CARLETON B. RIKER et al., Respondents.

Argued May 22, 1952; decided July 15, 1952.

368

*Charles Andrews Ellis, Reginald C. Smith* and *Syrena S. Stackpole* for appellants. I. Testator unquestionably had a definite intention respecting appellant's substitution and, in doubly providing, in three substitutionary provisions, for substitution of Mrs. Childs' " lawful issue " and " or descendants," manifested his intention not to exclude but to substitute appellant. (*Munie* v. *Gruenewald,* 289 Ill. 468; *Matter of Horn,* 256 N. Y. 294; *Bourne* v. *Dorney,* 227 N. Y. 641; *Johnson* v. *Brasington,* 156 N. Y. 181; *Soper* v. *Brown,* 136 N. Y. 244; *Matter of Farmers Loan & Trust Co.,* 213 N. Y. 168; *Lavery* v. *Egan,* 143 Mass. 389; *Matter of Cook,* 187 N. Y. 253; *Pross* v. *Anson,* 273 App. Div. 860, 298 N. Y. 718; *Hill* v. *Crook,* L. R. 6 H. L. 265; *Holt* v. *Sindrey,* L. R. 7 Eq. 170; *Gelston* v. *Shields,* 78 N. Y. 275.) II. The " separate and distinct " trust under paragraph Seventh (B), and the provisions of paragraph Seventh (D), are inconsistent with exclusion of appellant, and conclusively establish her right to substitution. (*Gwyer* v. *Gwyer,* 5 App. Div. 156, 160 N. Y. 659; *Staples* v. *Mead,* 152 App. Div. 745, 159 App. Div. 922, 214 N. Y. 625; *Bowditch* v. *Ayrault,* 138 N. Y. 222; *Matter of Walter,* 270 N. Y. 201; *Matter of Foster,* 108 Misc. 604; *Matter of Barker,* 230 N. Y. 364; *Matter of Lawrence,* 238 N. Y. 116; *Weeks* v. *Cornwell,* 104 N. Y. 325; *McLean* v. *McLean,* 207 N. Y. 365; *Roosa* v. *Harrington,* 171 N. Y. 341.) III. The explanation carefully made in paragraph Seventh (C) that testator intended that substitutionary provision for the benefit primarily of the " lawful issue or descendants " of the named beneficiary, is inconsistent with the exclusion of appellant and further conclusively establishes her right to substitution. (*Matter of Trevor,* 239 N. Y. 6; *Matter of Gorham,* 283 N. Y. 399; *Matter of Horner,* 237 N. Y. 489.) IV. To determine " whether or not " appellant's substitution was intended requires a judicial ascertainment of testator's intent from the

whole will and surrounding circumstances; and the holding below that the proceeding was " exclusively concerned with " one subparagraph has precluded this. (*Matter of Title Guar. & Trust Co.*, 195 N. Y. 339; *Matter of Evans*, 234 N. Y. 42; *Matter of Farmers Loan & Trust Co.*, 213 N. Y. 168; *Matter of Durant*, 231 N. Y. 41; *New York Life Ins. & Trust Co.* v. *Viele*, 161 N. Y. 11; *Matter of Burrows*, 259 N. Y. 449; *Matter of Neil*, 238 N. Y. 138.) V. Instead of judicially ascertaining " whether or not " testator intended appellant to be substituted, both Surrogates and the Appellate Division have erroneously avoided and defeated this by holding that " Section 115 * * * prohibits " appellant " from taking ". (*Colton* v. *Fox*, 67 N. Y. 348; *Herzog* v. *Title Guar. & Trust Co.*, 177 N. Y. 86; *Central Trust Co.* v. *Egleston*, 185 N. Y. 23; *Morton* v. *Woodbury*, 153 N. Y. 243; *Matter of Horn*, 256 N. Y. 294; *Holmer* v. *Holmer*, 253 N. Y. 498; *Fowle* v. *Common Council of Alexandria*, 11 Wheat. [U. S.] 320; *Slocum* v. *New York Life Ins. Co.*, 228 U. S. 364; *Panama Mail S. S. Co.* v. *Vargas*, 281 U. S. 670.) VI. At the times both of appellant's adoption (1905) and when testator made his will (1917), testator was full owner of his property, entitled to dispose of it as he pleased; there were no " rights of remaindermen " for either a birth or an adoption to " defeat "; and the statute does not " prohibit " the bequest nor " prohibit " appellant " from taking ". (*Matter of Hoyt*, 223 N. Y. 617; *United States Trust Co.* v. *Wheeler*, 73 App. Div. 289, 173 N. Y. 631; *Losey* v. *Stanley*, 147 N. Y. 560; *Matter of Holden*, 207 Minn. 211; *Hartwell* v. *Tefft*, 19 R. I. 644; *Matter of Leask*, 197 N. Y. 193; *Matter of Watson*, 262 N. Y. 284; *Dodin* v. *Dodin*, 16 App. Div. 42, 162 N. Y. 635; *Matter of Horn*, 256 N. Y. 294.)

*Robert W. Maloney, Jr.*, for John S. Redpath, respondent. I. The Surrogate has correctly construed paragraph Seventh (C) of the will, on the pleadings and record before him, to exclude appellants as secondary income beneficiaries of the trusts created by paragraphs Seventh (A) and (B) of the will, under the general rules for the construction of wills. The intention of the testator governs and the Surrogate has here found an intention that the adopted child, Alice Elizabeth Childs Lake, was not included in the descriptive class of " lawful issue or descendant " of the named beneficiary Alice A. Childs. (*Matter*

*of Barrett,* 141 Misc. 637; *New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11; *Central Trust Co.* v. *Skillin,* 154 App. Div. 227; *Matter of Battell,* 286 N. Y. 97; *Matter of Ellis,* 178 Misc. 491, 264 App. Div. 846.) II. The Seventh (C) substitution formula applies equally to income beneficiaries of the Seventh (A) and (B) trusts and to beneficiaries of the Seventh (B) trust principal. Analysis of the pattern of both trusts demonstrates testator's intention that survivorship is required for participants in the (B) trust remainders. (*Matter of McCombs,* 261 App. Div. 449, 287 N. Y. 557; *Matter of Burdsall,* 128 Misc. 582, 221 App. Div. 756; *Matter of Cuddeback,* 174 Misc. 322; *Vanderzee* v. *Slingerland,* 103 N. Y. 47; *Matter of Crane,* 164 N. Y. 71; *Dickerson* v. *Sheehy,* 209 N. Y. 592; *Matter of Baer* v. *Hendricks,* 147 N. Y. 348; *Hunt* v. *Tuller,* 244 App. Div. 363.) III. The Surrogate correctly interpreted the effect of section 115 (formerly §§ 114, 64) of the Domestic Relations Law to prohibit the adopted child from taking. (*Purinton* v. *Jawrock,* 195 Mass. 187; *Saragin* v. *Union Ry. Co.,* 153 Mo. 479; *Matter of Bamber,* 147 Misc. 712; *Murphy* v. *Brooks,* 120 Misc. 704; *Matter of Monroe,* 132 Misc. 279; *New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11; *Matter of Hopkins,* 102 App. Div. 458; *Matter of Walter,* 270 N. Y. 201; *Matter of Horn,* 256 N. Y. 294.)

*Benjamin Heller* and *Saul Wolf,* in person, for Saul Wolf, respondent. Alice, the adopted daughter of Mrs. Childs, is not included in the class of '' lawful issue or descendants '' designated by testator in paragraph Seventh (C) of his will. She is excluded by virtue of section 115 of the Domestic Relations Law, and by reason of the fact that in providing for limitations over of income conditioned upon the beneficiary dying before termination of the trusts without '' lawful issue or descendants '', testator used the quoted words in their primary sense, signifying lineal descendants. (*Matter of Cook,* 187 N. Y. 253; *Matter of Hodges,* 294 N. Y. 58; *New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11; *Matter of Hopkins,* 102 App. Div. 458; *Matter of Leask,* 197 N. Y. 193; *Trowbridge* v. *Trowbridge,* 182 Misc. 191, 269 App. Div. 826; *Matter of Hoyt,* 120 Misc. 188; *Matter of Cotheal,* 121 Misc. 665; *Matter of Cuddeback,* 174 Misc. 322; *Matter of Denton,* 195 Misc. 938; *Matter of Reeb,* 198 Misc. 1081; *Matter of Marsh,* 143 Misc. 609; *Matter of*

*Dudley,* 168 Misc. 695; *Dodin* v. *Dodin,* 16 App. Div. 42, 162 N. Y. 635; *Pross* v. *Anson,* 273 App. Div. 860, 298 N. Y. 718; *Matter of Kroos,* 302 N. Y. 424; *Matter of Battell,* 286 N. Y. 97; *Overheiser* v. *Lackey,* 207 N. Y. 229; *Matter of Corlies,* 150 Misc. 596, 242 App. Div. 703.)

*John T. Trimble* for Carleton B. Riker and others, respondents. I. The Appellate Division correctly held that payments of costs and allowances must be made out of the corpus of the Alice S. Childs' trust. II. The only trust in issue is the subsidiary trust to which appellants have made claim, and the issue was created by the status of appellant Elizabeth Childs Lake. None of the other subsidiary trusts are involved in any way in the construction proceeding. III. The decree of the Surrogate was correct in directing disposition of the income and principal of the Alice S. Childs' trust, and should have been affirmed by the Appellate Division.

FULD, J. Frederick Lawrence Upjohn died in December of 1917. By paragraph Seventh (A) of his will, executed some eleven months before his death, he directed that the income of one half of his residuary estate be paid to his wife during her life, and then, during the life of his grandnephew, Robert Redpath, to the beneficiaries named in Seventh (B). By the latter provision, the testator created seventeen separate trusts — in favor of nephews, nieces, grandnephews, grandnieces, and other persons — out of the remaining one half of the residue, and directed that the income of each be paid during Redpath's life to the designated beneficiary. Mrs. Alice Childs, the testator's niece, was one of those beneficiaries. After making provision in Seventh (B) for the disposition of the corpus of the several trusts therein created, the testator provided in Seventh (C) that, if any beneficiary named in (B) was to die before the termination of the trust, the income payable to that beneficiary was to be paid, during the existence of the trust, " to his or her lawful issue or descendants, if any  *  *  *  and in default of such issue or descendants surviving " to the other designated beneficiaries; and, if any of the latter were then dead, to their " lawful issue or descendants," in the same proportions as provided for the original shares.

In 1905, Mrs. Childs and her husband, who never had any children of their own, adopted a two-month-old baby, Alice Elizabeth (now married, she is the appellant Mrs. Lake). The testator knew of the adoption, though with other members of the family he kept it secret. Upon Mrs. Childs' death in 1950, the trustees petitioned the Surrogate's Court to " construe the provisions of Paragraph Seventh (C) * * * and determine " whether or not Alice Elizabeth is the " issue " or " descendant " of Mrs. Childs, " as such words are contained in said Paragraph Seventh (C) ". The surrogate held that she is not, and the Appellate Division — though it modified the decree with respect to costs and allowances — agreed with that conclusion.

Embodied in our adoption statute is the fundamental social concept that the relationship of parent and child, with all the personal and property rights incident to it, may be established, independently of blood ties, by operation of law, and that has been part of the public policy of this state since 1887 (Domestic Relations Law, § 115; L. 1887, ch. 703; cf. L. 1873, ch. 830). The statute unequivocally ordains that " The foster parents or parent and the foster child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from each other." (Domestic Relations Law, § 115, 3d par.). By reason of that provision, we have held, " the adopted child, in a legal sense, became the natural child of the adoptive parent." (*Carpenter* v. *Buffalo Gen. Elec. Co.,* 213 N. Y. 101, 108.) " In the eye of the law, therefore, adopted children are lineal descendants of their foster parent. They are in the line of descent from him through the command of the statute, the same as if that line had been established by nature." (*Matter of Cook,* 187 N. Y. 253, 261.) In harmony with the legislative policy thus expressed, the adoption statute has been most liberally and beneficently applied. It has been held that, where property is devised or bequeathed to a brother, sister, child ,or descendant of the testator, and that person dies in the lifetime of the testator survived by a foster child, the devise or legacy does not lapse, but vests in the foster child — for the latter is a " child " or " descendant " of the legatee or devisee within the meaning of section 29 of the Decedent Estate Law.

(See *Matter of Walter*, 270 N. Y. 201.) By the same token, a foster child, adopted subsequent to the execution of its foster parent's will, has a right, as a "child born after the making of a last will", to an intestate share of the parent's estate if no reference is made to him in the instrument. (Decedent Estate Law, § 26; see *Matter of Guilmartin*, 277 N. Y. 689; *Bourne v. Dorney*, 184 App. Div. 476, affd. 227 N. Y. 641.) And an adopted child is entitled to the benefit of section 17 of the Decedent Estate Law, prohibiting devises or bequests of over half the testator's estate to charity in the event that he is survived by a "child." (See *Matter of Mawhinney*, 146 Misc. 30, affd. 239 App. Div. 874.)

Wills, too, must be read and construed in harmony with the legislative policy of placing adopted children on a level with natural born offspring. (See *Gilliam v. Guaranty Trust Co.*, 186 N. Y. 127, 138; *Matter of Ellis*, 178 Misc. 491, 492.) It is in that spirit that the question of construction before us — whether Alice Elizabeth is Mrs. Childs' "issue" or "descendant," as those terms are used in paragraph Seventh (C) of the will — must be approached.

The limitation under consideration does not, contrary to respondents' contention, contain "language that has acquired, through judicial decision, a definite and established significance". (*Matter of Krooss*, 302 N. Y. 424, 428.) Terms such as "issue", "lawful issue", "descendants" — and the word "children", as well — may or may not include adopted children; read alone, and apart from context, those words are ambiguous. If they are viewed in their historical sense, they do not include foster children, because adoption is purely a creature of statute, unknown to the common law. (See 3 Restatement, Property, § 265, comment *c*; § 287, comment *a*.) If, though, they are read in light of the adoption statute — as properly they may be (see *Munie v. Gruenewald*, 289 Ill. 468, 472; *Mooney v. Tolles*, 111 Conn. 1, 7) — they do include a foster child. As we have seen, the law places an adopted child on a plane of equality with a natural born child and in the line of descent from his foster parent. It has been said that the terms "issue" and "descendants" "probably carry a stronger connotation of blood relationship than the word 'children'" (Oler, Construction of Private Instruments Where Adopted Children Are Concerned, 43 Mich. L. Rev. 705, 727; see, also, 3 Powell, Real

Property [1952], p. 132), but that is not normally a factor of weight, in view of the known frequency with which testators employ " issue " and " descendants " as essentially synonymous with " children " and, certainly, in a sense no more restrictive or narrow. (See, e.g., *Pross* v. *Anson,* 273 App. Div. 860, affd. 298 N. Y. 718; *Matter of Fedders,* 187 Misc. 207; *Mooney* v. *Tolles, supra,* 111 Conn. 1; *Kindred* v. *Anderson,* 357 Mo. 564; *Matter of McEwan,* 128 N. J. Eq. 140; see, also, Oler, *loc. cit.*)

What the testator meant when he used the words " issue " and " descendants " is not to be decided *in vacuo.* It is impossible for a court to ascertain the meaning with which they were employed in a particular will without considering the context of the entire instrument and the background of facts and circumstances existing when the will was made. (Cf. *Matter of Title Guar. & Trust Co.,* 195 N. Y. 339, 344.) The rule in this state, declared in *New York Life Ins. & Trust Co.* v. *Viele* (161 N. Y. 11, 20), is that the limitation will be construed to designate only those related to the named ancestor by blood if " there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered ". In other words, in the absence of any indication of the testator's intent, it will be assumed that the testator did not envisage adopted children taking under the limitation. That, though, is a rule of construction and nothing more. Where the testator's design to include an adopted child is clear, the limitation will be construed to effectuate that intention. In our view, the present is such a case.

Of surpassing significance is the fact that, when the testator drew the will, he had full knowledge of the adoption that had taken place eleven years earlier when Alice Elizabeth was two months old. Far more often than not, it is recognized, a testator " accepts the situation and relationship which the adopting parents have created." (*Matter of McEwan, supra,* 128 N. J. Eq. 140, 147.) Where it appears that he knew of the adoption, he is taken, therefore, to have intended inclusion of the adopted child, and his will is so construed, unless other language in the will or other circumstances reflect a different or contrary intention. (See *Matter of Horn,* 256 N. Y. 294; *Dodin* v. *Dodin,* 16 App. Div. 42, 47, affd. 162 N. Y. 635; *Matter of*

*Fedders, supra,* 187 Misc. 207, 217; *Estate of Pierce,* 32 Cal. 2d 265, 271; *Mooney* v. *Tolles, supra,* 111 Conn. 1, 9–11; *Ansonia Nat. Bank* v. *Kunkel,* 105 Conn. 744; *Munie* v. *Gruenewald, supra,* 289 Ill. 468, 472; *Bray* v. *Miles,* 23 Ind. App. 432; *Mesecher* v. *Leir,* 241 Ia. 818; *Matter of McEwan, supra,* 128 N. J. Eq. 140, 147; *Smyth* v. *McKissick,* 222 N. C. 644, 654–655; *Matter of Truman,* 27 R. I. 209, 212; see, also, 3 Restatement, Property, § 287, subd. [2], cl. [b] and comment *g*; cf. § 292, comment *a*; 3 Powell, *op cit.,* pp. 124, 133–134, n. 78; 2 Simes, Law of Future Interests [1936], § 415, p. 223; Oler, Construction of Private Instruments Where Adopted Children Are Concerned, 43 Mich. L. Rev. 901, 909–911.)  " Thus," writes one commentator, " if the adoption occurred before the execution of an instrument, such as a will or deed of trust, which made provision for the adopter's children or issue, and the testator or settlor knew of the adoption, and particularly if he approved of it, the adoptee has usually been deemed to be within the designation." (Oler, *op. cit.,* 43 Mich. L. Rev. 901, 909.)

In the present case, the testator knew that Alice Elizabeth had, by force of the adoption, become his niece's child, her issue and descendant.  Indeed, in view of Mrs. Childs' age — she was over forty years old — and her failure to have any natural born children during twenty years of marriage, the testator must have realized — even assuming that he did not know that his niece was physically incapable of bearing children — that Alice Elizabeth would in all probability be Mrs. Childs' *only* descendant.  (See *Ansonia Nat. Bank* v. *Kunkel, supra,* 105 Conn. 744; *Bray* v. *Miles, supra,* 23 Ind. App. 432; *Martin* v. *Aetna Life Ins. Co.,* 73 Me. 25; see, also, 3 Restatement, Property, § 287, comment *g*; cf. *Matter of Horn, supra,* 256 N. Y. 294.)  The designation " issue " and " descendant," therefore, adequately and sufficiently identified the adopted Alice Elizabeth as a possible beneficiary of his bounty.  Had he desired that she be excluded, he could and would have indicated that intention plainly and expressly.

Moreover, in view of the evidence of the testator's relationship with Alice Elizabeth and her foster parents, it is manifest that he could not have harbored a design to exclude her.  The proof establishes that he was on intimate terms with his niece and her family.  They often were house guests for

extended periods at his Long Island home, and he was a frequent visitor of theirs. It was actually during a two-week stay with Alice Elizabeth and her parents at their New York City apartment that he drafted and executed the will before us. And the uncontradicted evidence — consisting largely of the testimony, against interest, of a grandniece of the testator, a childhood companion of Alice Elizabeth — reveals numerous instances of the testator's affection and generosity toward his niece's foster daughter and demonstrates that he regarded and treated her at least as favorably as the children of his other nieces and nephews. More, he actively sought, in concert with other members of the family, to conceal from her the fact that the Childs were not her natural parents. It casts considerable light on Alice Elizabeth's place in the family group that, as a result of these efforts of the Upjohn clan, she did not discover that she was an adopted child until 1950, thirty-three years after the execution of the will, when Mrs. Childs' death occasioned the present litigation.[1]

We are drawn, then, to the conclusion that the only reasonable inference to be educed from the record is that the testator, in making his will, considered Alice Elizabeth to be his niece's " issue " and " descendant," and intended that she be substituted as beneficiary of the Childs trust on her foster mother's death. And the plan of his dispositions supplies still further confirmation. The trust, it will be recalled, was measured, not by Mrs. Childs' life, but by the life of a third person, Robert Redpath. If the testator's niece had survived Redpath, the corpus of the trust would have vested in her under Seventh (B) and, on her death, Alice Elizabeth would in all probability have become owner of that portion of the estate by inheritance from her foster mother. The testator, of course, realized that, and there is no reason for assuming that he desired a different disposition of the

---

1. It is perhaps of some significance that, although twelve of the seventeen persons designated by the will as beneficiaries of Seventh (B) trusts are still alive, only one, a grandnephew of the testator, who was a child when the will was executed, contests Alice Elizabeth's claim. The only other contestant is the special guardian appointed to represent the infants having contingent interests in the other Seventh (B) trusts.

income if — as actually occurred — Mrs. Childs predeceased the measuring life. (Cf. *Munie* v. *Gruenewald, supra,* 289 Ill. 468.) In this respect, the case before us differs materially from the *Viele* case (*supra,* 161 N. Y. 11, 20–22), upon which respondents rely; there, as the court observed, the will itself clearly evidenced a design to exclude adopted children. It follows that the courts below erred in concluding that the testator's design was not to include the adopted child.

Nor may the exclusion of Alice Elizabeth be predicated upon section 115 of the Domestic Relations Law. The fourth paragraph of that section — which follows the clause, quoted above, declaring that foster parent and child " shall sustain toward each other the legal relation of parent and child " — provides: " As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

The motivation for this provision and its underlying rationale are clear. Designed to assure that the testator's intention be effected, it mandates that, where the testator has designated remaindermen to share in his estate in the event that a named individual dies without children or descendants, an adopted child of the latter may not, by force of the adoption law, be held to come within the class and thus defeat the remainders. The legislature was particularly concerned about the perpetration of fraud on the rights of remaindermen " through an adoption for the very purpose of cutting out a remainder." (*Matter of Walter, supra,* 270 N. Y. 201, 206.) As we wrote in *Matter of Horn* (*supra,* 256 N. Y. 294, 297): " Where the passing by limitation over of real or personal property is dependent on a parent dying without heirs or children, it would be very easy for a person having no child or children to adopt one and thus cut off the contingent remainder. The statute was aimed at such a possibility. Such is the reasoning in *Matter of Leask* [197 N. Y. 193]."

As we have seen, Frederick Lawrence Upjohn's intent to include Alice Elizabeth as " lawful issue " and " descendant " of Mrs. Childs is exceedingly clear and, for that reason, the

statute — designed " to safeguard the intention of a testator ", not to defeat it — does not apply. (*Matter of Walter, supra,* 270 N. Y. 201, 206.) And the possibility of fraud, it must also be marked, is entirely absent. When he made his will, the testator knew full well of Alice Elizabeth's adoption years before. The words were at hand to announce that that adoption should not entitle her to share in his estate in preference to the remaindermen if that was really his wish or desire. The danger of fraud arises where the adoption takes place without the testator's knowledge, especially when it occurs after his death. That was, we observe, the situation in *Matter of Leask,* 197 N. Y. 193, and is one circumstance that thoroughly differentiates that case from the one under consideration.

In modifying the decree of the Surrogate's Court, the Appellate Division provided that costs and allowances be paid out of the corpus of the Childs trust alone, rather than, as the surrogate had directed, out of the principal of all the Seventh (B) trusts, in the same proportions as each of those trusts bears to the total of the trust estates under said paragraph Seventh (B). In our view, since decision herein will have a practical bearing upon the construction of other provisions of the will, the surrogate properly exercised his discretion in making the direction that he did.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, and the matter remitted to the Surrogate's Court for further proceedings not inconsistent with this opinion, with costs in this court and in the Appellate Division to all parties appearing separately and filing separate briefs, payable out of the principal of all the trusts created and now existing under paragraph Seventh (B) in the same proportions as each trust bears to the total of the trust estates under said Seventh (B).

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Order reversed, etc.