In the Matter of the Construction of the Will of MAYER S. AMES, Deceased.

Surrogate's Court, New York County, February 8, 1955.

*Jesse Climenko* for Blanche S. Ames and another, as surviving trustees under the will of Mayer S. Ames, deceased, petitioners, for motion.

*Vincent R. Fitz Patrick,* special guardian for Paul S. Ames, Jr., and others, infants, for motion.

*Hyman R. Friedman* for Raquek T. Ames, opposed.

*Alexander I. Rorke,* special guardian for Blanca S. Ames, an infant, opposed.

COLLINS, S. This is a motion to strike out interrogatories noticed for settlement on an application for the issuance of a commission in a proceeding to construe the will. The question at bar concerns the right of an adopted child as issue of a deceased son of the testator to share in a gift of the remainder of the residuary trust.

The testator left the residue of his estate in trust for his wife for life and made provision for the disposition of the remainder upon her death in the following language: "Nineteenth: Upon the death of my wife, BLANCHE S. AMES, or if she shall not survive me upon my death, I give, devise and bequeath one-half of my residuary estate to my son, STEPHEN M. AMES, provided he shall then be living, and one-half thereof to my son PAUL S. AMES, provided he shall then be living. If either of my said sons shall theretofore have died, I give, devise and bequeath the share of my residuary estate which said son would have been entitled to receive had he not died to the then living issue of such son, or if such son shall have no issue who shall then be living, to my other son if he shall then be living, or if such other son shall also have died, to the then living issue of such other son."

The testator died in 1929. He was survived by his widow and his sons Stephen and Paul. Stephen died on April 22, 1954, never having had a natural child but survived by a daughter Blanca whom he adopted on February 6, 1946. Paul is the father of three children all of whom are presently living, as is the widow of the testator. The special guardian appointed

to represent the adopted daughter of the deceased son states that he is prepared to prove that Stephen was incapable of fathering a child because of injuries which he had sustained while a student in college. He states further that it can be established that the testator was aware of this condition at the time that he executed the will. It is the theory of the special guardian that because of these circumstances there must be attributed to the testator an intention to include the adopted child or children of Stephen within the meaning of the word "issue" as employed in the gift of the remainder.

The special guardian for the infant Blanca now seeks to take the testimony by commission of witnesses located outside the State. A motion to quash the interrogatories has been brought on by the petitioning trustees. The witnesses whose testimony is sought to be taken include six physicians and two lay persons, to whom the deceased son is said to have divulged knowledge of his condition. The petitioners oppose the granting of the examination of the physicians on the ground that the use of their testimony is barred because of the decision of the Court of Appeals in *Matter of Coddington* (307 N. Y. 181). They contend further that the testimony which the special guardian seeks to elicit on the examination of the lay witnesses is not pertinent and hence is barred under the provisions of section 288 of the Civil Practice Act and rule 126 of the Rules of Civil Practice which states with respect to the settlement of interrogatories that "Either party shall be allowed to insert any question pertinent to the issue."

The special guardian in support of his substantive argument places chief reliance upon the decision of the Court of Appeals in *Matter of Upjohn* (304 N. Y. 366). It was held in that case that the word "issue" is susceptible of definition so as to include an adopted child or children provided that the word was used in that sense by the testator. The court in *Matter of Upjohn* (*supra*, p. 375), said that the word "issue" is ambiguous when read apart from context, stating: "What the testator meant when he used the words 'issue' and 'descendants' is not to be decided *in vacuo*. It is impossible for a court to ascertain the meaning with which they were employed in a particular will without considering the context of the entire instrument and the background of facts and circumstances existing when the will was made. (Cf. *Matter of Title Guar. & Trust Co.*, 195 N. Y. 339, 344.)" With this proposition to guide us it will be seen that the sole question in this case involves the knowledge upon the part of the testator of his son's condition at the time

that he executed the will. The fact that the son may have communicated knowledge of his illness to physicians or friends is not pertinent in connection with that question.

The court is wholly in agreement with the argument of the special guardian that the only objection which may be interposed in connection with the settlement of interrogatories **relates** to " pertinency." (*Matter of Durkan,* 158 Misc. 556; *Wanamaker* v. *Megraw,* 168 N. Y. 125; *Matter of Pearle,* N. Y. L. J., Oct. 17, 1949, p. 861, col. 6; *Matter of Mandel,* N. Y. L. J., March 17, 1948, p. 992, col. 6.) Interrogatories may not be disallowed because of objections relating to competency of the witness, for such objections may properly be interposed only upon the trial. Interrogatories may, of course, be disallowed if improper in form, but with these exceptions the court is under a duty to allow all questions pertinent to the issue involved in the proceeding (cases cited *supra*).

The word " pertinent " is defined as follows: " Related to the matter in hand or subject under consideration; relevant; to the point; as *pertinent* examples or evidence." (Webster's New International Dictionary.) It will be seen that evidence of the son's disclosure of the existence of his condition to physicians or friends has no bearing upon the question of whether the testator was aware of the existence of the fact. For this reason the special guardian has failed to meet the test of pertinency imposed by the statute and the rule.

Apart from consideration of the question of pertinency it is quite clear that the special guardian is not entitled to elicit information obtained by the physicians whose testimony is sought to be taken. The use of such testimony on the trial would clearly be barred under the decision of the Court of Appeals in *Matter of Coddington* (*supra*), and as was pointed out in *Matter of Meyer* (206 Misc. 368, 370), it has long been established that the privilege granted to a patient by section 352 of the Civil Practice Act extends to an examination before trial. As was said there: " It would be illogical to compel disclosure at the examination before trial and to forbid such disclosure at the actual hearing." To the same effect see *Lorde* v. *Guardian Life Ins. Co.* (252 App. Div. 646).

Apparently aware of the effect of the decision in the *Coddington* case the special guardian seeks to examine the physicians not alone in their professional capacity but also as friends of the deceased's sons and to elicit from them such information as they may have acquired by reason of the latter relationship. This testimony like that of the lay witnesses is barred because

it is not pertinent to the only issue involved in this proceeding, that is, whether the testator was aware of his son's condition at the time of the execution of the will and hence might possibly have imputed to him an intention to include an adopted child within the meaning of the word " issue " as used in the language of gift. For these reasons the motion to strike out the interrogatories is in all respects granted.

Submit order on notice.