In the Matter of the Intermediate Accounting of HANOVER BANK, as Trustee under Trust Made by SYBIL H. RICKS, for the Benefit of JAMES B. RICKS, Deceased, and Others, Respondent. PAMELA S. RICKS et al., Appellants; SANDRA L. RICKS HUMPHREY et al., Respondents.

First Department, March 16, 1961.

*C. Murray Kavanagh,* guardian ad litem for appellants.

*Osborne A. McKegney,* guardian ad litem for respondents.

*Kelly, Drye, Newhall & Maginess* for Hanover Bank, respondent.

VALENTE, J. In a proceeding to settle the intermediate account of a trustee under an *inter vivos* trust, Special Term has held that adopted children of James B. Ricks — the primary life beneficiary who died on August 14, 1959 — participate with his natural children in receiving income during the continuance of the trust and also participate with the natural children in the distribution of principal upon termination of the trust.

The trust created by Sybil Hayward Ricks in December, 1950 provided that the net income was to be paid to the grantor's son, James B. Ricks during his lifetime. Upon his death and during the lifetime of the grantor's granddaughter, Rhoda Sybil Ricks — a daughter of James — the income was to be paid " to the descendants of the Grantor's son, James B. Ricks, *per stirpes* and not *per capita,* who shall be living from time to time as the income hereunder becomes payable ".

At the time of the creation of the trust, James B. Ricks had three natural children born out of a marriage with Ethel G. Ricks, from whom he was divorced in 1947. Following another marriage to one Virginia Ricks, which ended in divorce in 1949, James B. Ricks married Doris Crandall in 1952. Two children of Doris Crandall by a former marriage were adopted by James B. Ricks in 1953, and these adopted children are the ones involved in the construction of the trust instrument herein.

In *Matter of Upjohn* (304 N. Y. 366, 375) it was said: " What the testator meant when he used the words ' issue ' and ' descendants ' is not to be decided *in vacuo.* It is impossible for a court to ascertain the meaning with which they were employed in a particular will without considering the context of the entire instrument and the background of facts and circumstances existing when the will was made. (Cf. *Matter of Title Guar. & Trust Co.,* 195 N. Y. 339, 344.) "

In general a limitation in favor of " issue " or " descendants " will be construed to include only persons who have a blood relationship to the ancestor. The terms " have a biological flavor, connoting persons who have in fact been generated by the designated person." (3 Powell, Real Property [1952], § 360, p. 132; *New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11.) It is only when the instrument by its context indicates a contrary intention, or properly considered extraneous facts point to a different conclusion, that the words " issue " and " descendants " will be held to include adopted children.

Certainly, there is nothing in the context of the trust instrument herein which indicates anything but emphasis on the blood line. The reiteration of the word " descendants " in other clauses and the provisions for distribution per stirpes reflect concern only with blood lines.

Whenever courts have included adopted children within the ambit of the words " issue " or " descendants " in instruments, they have done so on the basis of properly considered extraneous facts existing at the time the instrument was drawn. In *Matter of Upjohn (supra)* the salient fact was that the testator knew of the adoption prior to the making of the will. In *Matter*

*of Day* (10 A D 2d 220) the question was whether a child adopted eight years after the death of the settlor was to be treated in the same manner as a child, adopted prior to the creation of the trust, of whom the settlor had full knowledge. Since the settlor's intent with respect to the adopted child about whom he had full knowledge was to draw no distinction between that child and his natural grandchildren, it would violate that intent to make a distinction between natural grandchildren and a subsequently adopted child.

So, too, in *Matter of Ward* (9 A D 2d 950) although the adoption occurred after the death of the testatrix, the court held that the adopted child came within the limitation to "lawful issue" where it appeared from the testimony that the testatrix favored adoption generally, that she had approved and advocated adoption of children for her married but childless daughter, and that she desired in the disposition of her estate to treat all three of her children equally. It was this background of facts and circumstances existing when the will was made which impelled the court to find that the testatrix did not intend by the use of the words "lawful issue" to exclude the subsequently adopted child.

In the instant case, we do not have any of the extraneous circumstances found in *Matter of Upjohn* (*supra*), *Matter of Day* (*supra*) and *Matter of Ward* (*supra*). In the absence of such a background of facts and circumstances, Special Term should have construed the trust instrument to exclude as "descendants" the children adopted by James B. Ricks after the execution of the trust deed. (See *Matter of Leask,* 197 N. Y. 193.)

It has been consistently held that in similar circumstances, where a child has been adopted after the death of the testator, that the adopted child does not fall within the class of persons designated as "issue" or "descendants" in the will. (*Matter of Peabody,* 17 Misc 2d 656; *Matter of Cook,* 8 Misc 2d 103; *Matter of Hilts,* 5 Misc 2d 862, affd. 4 A D 2d 1013; *Matter of Holt,* 206 Misc. 789.)

There was submitted to Special Term, as part of the report of the guardian ad litem of the adopted children, an affidavit by the grantor of the trust, sworn to on June 10, 1960, purporting to give the grantor's views as to her intention with respect to the inclusion of adopted children as "descendants", as that word is used in the trust instrument. Objection to consideration of that affidavit was voiced by the guardian ad litem for the natural children.

Whether declarations by a settlor of a trust, made subsequent to the execution of the trust, regarding the settlor's intention as to the meaning of language in the trust instrument, are admissible depends upon whether there is some ambiguity which has to be resolved. (See 2 Scott, Trusts [2d ed.], pp. 1158–1159; 9 Wigmore, Evidence [3d ed.], § 2471; Ann. 51 A. L. R. 2d, 820.) In *Matter of Nicol* (3 Misc 2d 898) affidavits as to intention were accepted although the court found them lacking in sufficient effect to show that the intention was to include adopted children within the term " issue ".

The affidavit, of the grantor herein, made almost 10 years after the execution of the trust instrument, falls far short of indicating her intention in 1950 to benefit subsequently adopted children. The grantor states that if there had been adopted children in 1950 or if the problem had then arisen she would have instructed her attorney to use language necessary to include them. Thus admittedly adopted children never occurred to the grantor when the word " descendants " was used. Hence, it cannot be said that the word was intended to include adopted children.

In any event, and whatever the rule as to declarations of intention, Special Term should not have permitted the use of the grantor's ex parte affidavit, over objection, without insisting that the grantor be called to testify and subject herself to cross-examination.

Finally, the order of Special Term provides that the adopted children, and their descendants, as well as the natural children, and their descendants, who shall be living at the termination of the trust, are to be included in the class to whom the principal of the trust shall be payable. Since the second measuring life of the trust was that of a grandchild of the grantor, it is possible that upon her death no descendants of the grantor's son, James B. Ricks, would be living. Under the trust instrument, if no descendants of James B. Ricks are living at the termination of the trust, the principal of the trust estate is to be paid to the grantor's descendants then living, and if there be no such descendants then the principal is to be paid to the distributees of the grantor under " the Statute of Intestacy of the State of New York then in effect ". It appears that the grantor has two other children who, in turn, have children.

The order should therefore be modified so as to construe the trust instrument as not including the adopted children of James B. Ricks as " descendants " of said James B. Ricks under the terms of the trust, and as so modified affirmed, with costs payable from the estate to all persons filing briefs.

Botein, P. J., Breitel, Stevens and Bastow, JJ., concur.

Order, entered on June 27, 1960, so far as appealed from, unanimously modified so as to construe the trust instrument as not including the adopted children of James B. Ricks as "descendants" of said James B. Ricks under the terms of the trust, and, as so modified, is affirmed, with costs to all parties filing briefs payable out of the estate. Settle order on notice.