Fuld, J. (dissenting).
To put the matter simply, it is my opinion that Matter of Ward (9 N Y 2d 722) and Matter of Charles (304 N. Y. 776)—both of which cases concerned children adopted after the execution of the instrument before the court—and Matter of Upjohn (304 N. Y. 366) —involving children adopted before the instrument’s execution—are decisive *235 of the case now before ns and call for a reversal. Indeed, I find it impossible to reconcile the decision now being made with the rationale expressed by this court in Matter of Upjohn (304 N. Y. 366, 373, supra) that “ Embodied in our adoption statute is the fundamental social concept that the relationship of parent and child, with all the personal and property rights incident to it, may be established, independently of blood ties, by operation of law, and that has been part of the public policy of this state since 1887 (Domestic Relations Law, § 115) ”.
Section 115 of the Domestic Relations Law explicitly recognizes that the adopted child sustains toward his foster parent the same relations that a natural child does. In so many words, that section (in its third paragraph) declares that “ The foster parents or parent and the foster child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from each other.” The exception contained in the fourth paragraph of the section does not apply to the present case. That paragraph provides that, “As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen.”
The fact is that the “passing” (here provided for) of the income interest during the secondary life estate, as well as the passing of the remainder interest at the termination of such secondary estate, is not a “ passing and limitation over * * * dependent * * * on the foster parent [James Ricks] dying without heirs”. As is evident, the only “passing”, affected in this case upon the death of James Ricks, is to his “ descendants ”. This is quite different from the situation, envisaged by section 115’s fourth paragraph, of a designated remainder-man who is to take in the event of ‘ ‘ the foster parent dying without heirs ”. We made this plain, I had thought, when we declared in Matter of Upjohn (304 N. Y. 366, supra) that the exception in that fourth paragraph was designed to prevent fraud. “ The motivation for this provision and its underlying rationale ”, the court wrote (p. 378), “ are clear. Designed to assure that the testator’s intention be effected, it mandates that, *236 where the testator has designated remaindermen to share in his estate in the event that a named individual dies without children or descendants, an adopted child of the latter may not, by force of the adoption law, be held to come within the class and thus defeat the remainders. The legislature was particularly concerned about the perpetration of fraud on the rights of remaindermen ‘ through an adoption for the very purpose of cutting out a remainder.’ (Matter of Walter, supra, 270 N. Y. 201, 206.) ”
The Appellate Division apparently permitted the public policy of this State, of equality of adopted children with natural children, to be defeated by a reliance upon the interpretation of claimed ambiguous language in a case where neither the statute nor the trust agreement leaves any room for interpretation. There can be no doubt as to the persons intended by the grantor when she used the word “ descendants ”. In some instances, ambiguity may lurk in that term, but this is not such an instance. Here, the word is used to describe the legal successors, by descent, of the grantor’s son James. The grantor could not have intended anyone other than those persons whom the law describes as descendants (Decedent Estate Law, § 83) — among whom adopted children are specifically included (Domestic Relations Law, § 115). Certainly, there is nothing to indicate an intention on the part of the grantor to exclude such adopted children. Contrariwise, her use of the word “ descendants ”, read as it must be in the light of section 115 of the Domestic Relations Law, actually points the conclusion that she intended her son’s adopted children, no matter when the adoption occurred (see Matter of Ward, 9 N Y 2d 722, supra; Matter of Charles, 304 N. Y. 776, supra), to be included.
If, however, the agreement could be said to be ambiguous, such ambiguity is dispelled by the affidavit which the grantor submitted at Special Term. In this affidavit she unequivocally declared that it was her intention, when she set up the trust some years before, to include within the term “ descendants ” any children her son might adopt “ after the execution of the Trust Agreement ”. (See, e.g., Matter of Coyle, 305 N. Y. 809.) “ In 1950 when the agreement was executed,” she wrote, “ I assumed that an adopted child was considered to be the same as a natural child. If there had been adopted children in 1950 *237 or if any problem had arisen at that time I would have instructed my attorney to use whatever language was necessary to include adopted children. Since there were no adopted children in 1950 and no such problem was presented, I did not so instruct my attorney, but it was not my intention to exclude adopted children from participation in the trust fund. ’ ’
The order of the Appellate Division should be reversed, and that of Special Term reinstated.
Judges Dye, Van Voorhis, Burke and Foster concur in Per Curiam opinion; Judge Fuld dissents in an opinion in which Chief Judge Desmond and Judge Froessel concur.
Order affirmed.