In the Matter of the Final Accounting of the CHASE MANHATTAN BANK, as Successor Trustee of the Trust Created for MURIEL McC. HUBBARD under a Deed of Trust Made by JOHN D. ROCKEFELLER and EQUITABLE TRUST COMPANY OF NEW YORK.

LINCOLN CENTER FOR THE PERFORMING ARTS, INC., et al., Appellants; LEON LEIGHTON, as Guardian ad Litem for JOHN R. McC. HUBBARD and Others, Respondents.

LEON LEIGHTON, as Guardian ad Litem for JOHN R. McC. HUBBARD and Others, Appellant; LINCOLN CENTER FOR THE PERFORMING ARTS, INC., et al., Respondents.

First Department, December 12, 1961.

*Ralph M. Carson* of counsel (*S. Hazard Gillespie, John C. Hover, J. Dormer Cannon, James A. Thomas, Jr.,* and *Samuel N. Allen* with him on the brief; *Davis Polk Wardwell Sunderland & Kiendl,* attorneys), for Lincoln Center for the Performing Arts, Inc., appellant and respondent.

*Hancock Griffin, Jr.,* of counsel (*Kelley Drye Newhall & Maginnes,* attorneys), for Juilliard School of Music, appellant and respondent.

*John S. Chapman, Jr.,* of counsel (*John F. Woods* with him on the brief; *Duer & Taylor,* attorneys), for Bennett College, appellant and respondent.

*Julius Greenfield* of counsel (*Paxton Blair* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for ultimate and indefinite charitable beneficiaries, appellant and respondent.

*William Eldred Jackson* of counsel (*Thomas B. Moorhead* with him on the brief; *Milbank, Tweed, Hope & Hadley,* attorneys), for Chase Manhattan Bank, respondent.

*David W. Peck* of counsel (*Sullivan & Cromwell,* attorneys), for Catherine M. Dwyer and others, respondents.

*Leon Leighton,* guardian ad litem of John R. McC. Hubbard and others, infants, respondent and appellant.

*Debevoise, Plimpton & McLean* for Charles McC. Hardin and another, respondents.

STEUER, J. The proceeding is the final accounting of the successor trustee of an *inter vivos* trust created by John D. Rockefeller as settlor in 1917. The trust has fallen in with the death of Muriel McCormick Hubbard, the final life beneficiary. The issue upon the accounting is the disposition of the corpus of the trust, the question being whether the same shall pass to certain infants who claim to be the adopted children of the life beneficiary, or whether it shall pass to certain charities named in accordance with the provisions of the trust indenture. The charities and the Attorney-General have filed amended answers to the petition and the three orders here under review result from applications made by the representatives of the said minor children in regard to the answers submitted on behalf of the charities and the Attorney-General.

The answers raise three issues. The first is whether the settlor intended to include adopted children in the designation in the instrument describing possible remaindermen. All parties conceded that this will be an issue and the allegations in the charities' answer which seek to raise it are not attacked. The second issue is whether the infant parties were legally adopted by the life beneficiary. The third issue is whether, assuming the two prior issues to have been determined in favor of the infants, they are still barred from receiving the corpus of the trust by virtue of section 117 (formerly § 115) of the Domestic Relations Law. It is the allegations in the answer which seek to raise the two latter issues that are under attack in the orders which are before this court for review.

The answers, in disputing the validity of the adoptions of the several infants, plead that these adoptions took place in various sister States of the Union and were accomplished by the decrees of various courts in the said States. In each instance it is alleged that the court lacked jurisdiction by virtue of the non-residence of the life beneficiary who was the party seeking the adoptions. The allegation of nonresidence is not challenged. In addition, the answers contain various allegations in regard to the proceedings which seek to question the validity of the adoptions. These allegations were stricken at Special Term and the order so providing is the first here on appeal.

As it is alleged that the adoptions are the result of court orders, these orders may not be attacked collaterally and are entitled to full faith and credit in this State (*New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11). It would follow that any challenge short of calling into question the jurisdiction of the court making the order of adoption would be ineffective, and a claim to that effect could not be heard. It would naturally follow that the allegations should be stricken.

The charities do not seriously dispute the above. However, they claim that the facts alleged would be admissible to establish their contentions in regard to section 117 of the Domestic Relations Law. They do not dispute, however, that, as presently pleaded, the issue is not properly or directly raised. In this situation they sought leave to amend their answers. This raises the question of what constitutes a proper pleading in connection with section 117, and whether the proposed amended answers would come within that classification.

The fourth paragraph of section 117 reads as follows: " As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not

deemed the child of the foster parent so as to defeat the rights of remaindermen.''

This statute, though of very long standing (originally L. 1896, ch. 272), has not often been employed as the grounds of decision. In view of the other paragraphs of the section, which define the rights of adopted children and place them on a footing of virtual equality with natural children, it has been held that the paragraph has application only in the specific situation to which it refers (*Matter of Walter*, 270 N. Y. 201). So that it becomes a canon of interpretation — if an instrument leaves a remainder to designated persons on condition that the life tenant die without heirs, adopted children are not to be considered, although natural children would, of course, defeat the remainderman's right to succeed to the property. However, as a canon of interpretation rather than a statute directly governing descent and distribution, it has been made to yield to positive proof of a contrary intent of the grantor. Thus where the grantor was aware of an adoption which antedated the instrument and where he approved of the adoption and regarded the child as the natural child of the foster parents, the statute did not prevent the adopted child from taking in preference to remaindermen (*Matter of Upjohn,* 304 N. Y. 366). Even where the adoption succeeded the instrument in time a similar result was reached where it was shown that the testator had urged such of her children as were without natural issue to adopt children (*Matter of Ward,* 9 N Y 2d 722). Nor was the quoted paragraph invoked where such evidence was lacking. A result unfavorable to the adopted child was reached by interpretation of the language of the instrument to exclude adopted children (*Matter of Leask,* 197 N. Y. 193). This provided a line of authority (collated in the opinion of VALENTE, J., in *Matter of Ricks,* 12 A D 2d 395) which established that unless the language employed indicated affirmatively that adopted children were included, they were excluded, thus giving the statute effect without invoking it.

So that it was said that the underlying rationale of the statute was clear (*Matter of Upjohn, supra,* p. 378). That rationale was to prevent frustration of the grantor's intent by an adoption designed to divert the passage of the remainder from the destination that the settlor meant it to reach (see *Matter of Horn,* 256 N. Y. 294, 297). And an adoption for that purpose is styled '' fraud '' (*Matter of Upjohn, supra,* p. 378; *Matter of Walter, supra,* p. 205). These expressions would put limits to the applicability of the statute so as to render it virtually nugatory and

raise questions virtually insoluble. Must the fraudulent purpose of the foster parents be the sole inducing cause for the adoption, or the major inducement, or does such a purpose coupled with other, worthier motives destroy the right of succession where it otherwise would exist? How is it possible to establish among the myriad motives that prompt human actions in so delicate an area that an intent so extraordinary was the factor that induced the act of adoption? Suffice it to say that in the 65 years that the statute has been on the books no decision records an instance of a litigant coming into court offering to make such proof.

The answer is that the impression gathered from the above expressions does not correctly define the law and the arrival of the precise question shows that the path of the law is not lost in the mazes to which it appeared heading. The situations which the statute controls are of wider scope than was believed. Where the grantor fails to show an intent to include adopted children in the words used in the instrument and no competent proof of such an intent dehors the instrument is forthcoming, the statute operates as a bar (*Matter of Ricks,* 10 N Y 2d 231\*).

On this application we are concerned solely with a matter of pleading. The vital question, namely, whether, lacking proof that the settlor meant to include the particular children as objects of his bounty, the statute operates as a bar need not be decided at this time as it may never arise. What does concern the court at this stage of the litigation is whether such a question may be raised and, if so, whether the allegations are sufficient to raise it.

The representatives of the minors claiming to have been adopted argue that the intent of the settlor cannot be gathered from facts that took place after his death, and also that if he intended to include adopted children, that intent would not be changed by the circumstances surrounding the particular adoption. Both of these contentions are indisputable. And they assume from these premises that no facts in connection with the adoptions are properly admissible. This does not give full effect to the decisions interpreting the statute. In the first place, proof of the settlor's general intent may not be sufficient to defeat the statutory bar. And even if it should and an intent to include children by adoption may be spelled out, it does not

---

\* In that case the proof was that the grantor when executing the instrument had given the possibility of adopted children no thought at all. Her general attitude of approving the institution of adoption was held not to be such an intent as would prevent operation of the statute.

necessarily follow that conduct amounting to a fraudulent design to thwart his purposes would be countenanced. Facts to establish such a purpose would be admissible. We are not now concerned with the difficulties in the way of such proof that we have adverted to above. To the further contention that such facts would be provable under the denials and allegations presently standing in the answers of the charitable remaindermen, the answer is twofold. If so, no prejudice can result from a more specific pleading and doubts as to the scope of the prior ruling are removed.

Turning now to the proposed amended answers, we find that the pleadings are largely conclusory. This is a semantic difficulty frequently found in efforts to plead purpose or intent, and no objection on this score is made. Otherwise the issues are properly raised.

We therefore conclude that the order insofar as appealed from, striking the allegations in the answers of the charities and dismissing as academic the guardian ad litem's motion to strike as sham, should be affirmed on the law, with costs, payable out of the trust, to all parties filing briefs. The order denying leave to the same defendants to amend their answers should be reversed, on the law and as a matter of discretion, and leave to amend granted.

EAGER, J. (dissenting in part). I dissent only insofar as this court would reverse the order denying leave to the defendants to amend their answers and insofar as the court would grant leave to amend. I would affirm all orders appealed from without leave to amend. It is clear as held by the majority that the intent of the settlor cannot be gathered from the facts that took place after his death, and also that if he intended to include adopted children, that intent would not be changed by the circumstances surrounding the particular adoption. Upon that basis, however, I would hold that the conduct and motives of the petitioner in the adoption proceedings are entirely immaterial.

Where an adoption is in all respects legally effected and confirmed by a decree of a court of competent jurisdiction, the rights of the adopted child should depend solely upon the provisions of the statute and of any relevant instruments, the latter to be construed according to the intent of the settlor or testator.

It is true, as it is said, that the particular provisions of the statute for protection of the rights of remaindermen in case of an adoption (now fourth paragraph of section 117 of the Domestic Relations Law) were enacted for the purpose of

guarding against the perpetration of a fraud (see *Matter of Upjohn,* 304 N. Y. 366, 378). It would appear that the fraud which the statute was designed to prevent is the fraud *ipso facto* which would otherwise result in the cutting off of a remainder by an adoption. The statute is to be construed and given effect with this legislative purpose in mind. The legislative motivation in this connection is not, however, equivalent to legislative direction for the probing into the motives of the parties to a particular adoption. The statute was intended to be self-operative in accordance with its terms; and, subject only to the intent of the settlor or testator, the terms of the statute are to be given effect whenever the rights of remaindermen are involved. In my opinion, neither the statute nor the decisions authorize an inquiry in every or any case to determine whether or not the foster parents in effecting the adoption fraudulently acted with a design to thwart the purposes of a settlor or testator.

As long as the adoption stands, and absent the element of estoppel, the rights of the adopted child under the statute and by virtue of any instrument are not to be defeated by any alleged fraud in the adoption proceedings short of such fraud as would subject the adoption to invalidation on collateral attack. Here, as I understand, it is conceded that the adoptions are not subject to collateral attack. And the doctrine of estoppel may not work against the minor children involved here to deprive them of their rights under the valid adoptions. Therefore, I would hold that it would serve no purpose here and would, in fact, be contrary to public policy to permit a collateral inquiry as to motives underlying the adoptions.

BREITEL, J. P., McNALLY and STEVENS, JJ., concur with STEUER, J.; EAGER, J., dissents in part in opinion.

Order, entered on April 28, 1961, insofar as appealed from, striking the allegations in the answers of the charities and dismissing as academic the guardian ad litem's motion to strike as sham, unanimously affirmed, on the law, with costs to all parties filing briefs, payable out of the trust.

Order, entered on April 28, 1961, denying the motion of Lincoln Center for the Performing Arts, Inc., Bennett College and Juilliard School of Music to amend their answer, reversed, on the law and as a matter of discretion, and leave to amend granted.