John D. Bennett, S.
In this construction proceeding the executors request a determination as to whether two adopted children of the testatrix’ deceased son, James B. Ricks, share in a bequest of one fifth of the residuary estate to the children of the deceased son.
The critical portion of the will, revealing a number of words stricken out prior to execution, reads: “ Fourteenth: (c) I give, devise and bequeath one of such equal shares as follows: per capita, to such of the children and adopted children of ethel GHB-HtHBB-LHeies-aHdr of my late son, james b. kicks, deceased, as shall be living at the date of my death.”
The surviving children of James B. Ricks include three natural children of his marriage to Ethel Gertrude Ricks, his first wife, and two adopted children, the natural children of his *920 surviving spouse, Doris, by a prior marriage, whom he adopted in 1953. Doris, now known as Doris Lewis, remarried in 1962 following the death of her husband in 1959.
In a prior will dated in June of 1956, the testatrix gave detailed instructions as to the treatment of children adopted by any of her children, specifically including them within the definition of “ lawful issue ” for the purpose of sharing in the remainder of one fifth of the residuary for the benefit of her son James, but excluding them from sharing in a portion of the income from such share given to the “ lawful issue ” of James.
Following the death of her son James a codicil, dated August 27, 1959, continued the one-fifth share in trust for the benefit of James’ surviving spouse Doris “ during her lifetime so long as she remains unmarried” to the extent of two thirds of the income. The treatment and distinction between adopted and natural children of James was continued undisturbed.
The testimony given by Mr. McGorry, one of the subscribing witnesses and an officer of the corporate fiduciary, relating to the circumstances surrounding the execution of the last will was objected to by the respondents. The proffered testimony was received subject to a motion to strike in order that a complete record would be available on any possible appeal. Mr. McGorry testified to several discussions with the testatrix in regard to drafting her last will. At some of the discussions held at the testatrix’ home, the will draftsman who is now deceased was present. At one or more of the meetings Mr. McGorry stated that the testatrix instructed the draftsman to eliminate James’ family entirely from the will, and that this instruction was given in connection with a reference to the remarriage of Doris. When pressed as to whether the testatrix disliked the remarriage of her former daughter-in-law, Mr. McGorry answered: “ No, she reacted to it and it seems to me that her reactions were mixed somewhat. It was apparent to me that she liked her former daughter-in-law, but for some reason which I didn’t get quite clear she seemed to be put out by the marriage or the timing of it or the fact that she hadn’t learned about it in good time or something of the kind.”
Apparently, as the result of subsequent discussions in which Mr. McGorry was not a party, the final draft as originally prepared provided for James’ children, together with the adopted children of Ethel Gertrude Ricks (an obvious misstatement, since the adopted children were the natural children of Doris).
On January 11, 1963, the final proposed draft was presented to the testatrix for her signature. The testimony of Mr. McGorry concerning that occasion is as follows: “ Shortly after *921 we arrived Mr. Sculley produced the original of the will that it was intended that Mrs. Ricks execute and he handed it to her as I recall. She looked at portions and he called her attention to different portions or read them off to her, and when she arrived at this section you refer to she objected to the inclusion of the adopted children, so Mr. Sculley asked her if it was her intention that the adopted children be eliminated from the will and she said that was so. Thereupon Mr. Sculley made the strikeout that we see here and asked Mrs. Ricks and myself to initial it after he himself initialed it.”
The executors contend that nothing could be more obviously evident of the testatrix’ intention to exclude the adopted children than her act of striking out the phrase “ and adopted children of Ethel Gertrude Ricks and ’ ’ and inserting the word “ of ” before the words “ my late son ” prior to execution.
In answer to this seemingly persuasive contention, the respondents argue that changes or strikeouts in a will made prior to execution form no part of the will, and may not be considered as an aid in its construction. While there appears to be no New York case directly in point, the case of Ruth v. Jester (198 Va. 887) cited by the respondents supports this argument.
The respondents likewise point to the oft-repeated admonition that the testatrix’ direct statements of intention may not be resorted to with but few exceptions. They further maintain that the use of the word “ children ” by the testatrix in and of itself imports an intention to benefit adopted children. They nevertheless introduced evidence to the effect that the testatrix was “happy” that her son had adopted the respondents and maintained a friendly relationship with them.
Aside from the admissibility of the extrinsic evidence introduced, the respondents’ conclusion that the mere use of the word “children” connotes an intention to benefit adopted children is untenable. While the respondents agree that terms such as “ issue ” and “ descendants ” imply a blood relationship, they attempt to make a distinction between such terms and the word “children”. However, while the courts usually refer to the words “issue” and “descendants” as having a “biological flavor ” (Matter of Ricks, 12 A D 2d 395, affd. 10 N Y 2d 231), the same observation is also true of the word “ children ”, although possibly to a somewhat lesser extent (Matter of Upjohn, 304 N. Y. 366, 374). In Matter of Leash (197 N. Y. 193, 196) the Court of Appeals said: “ In New York and other states having similar statutes of adoption a limitation, in a deed or will to a child or children or conditioned upon the survivorship of a child *922 or children, is not deemed to include an adopted child where the grantor or testator is a stranger to the adoption” (Italics supplied; see, also, Matter of Hitts, 5 Misc 2d 862, affd. 4 A D 2d 1013; Matter of Cook, 8 Misc 2d 103).
The eases cited by the respondents such as Matter of Charles (200 Misc. 452, affd. 279 App. Div. 741, affd. 304 N. Y. 776) which include adopted children within a simple class gift to children, unless an intention to exclude them is apparent, have not been followed by subsequent cases restricting words such as “ issue ”, “ descendants ” and “ children ” to blood relations unless the instrument or properly considered extraneous facts point to a different conclusion (Matter of Taintor, 32 Misc 2d 160, affd. 16 A D 2d 768; Matter of Rides, supra). Recent legislation including adopted children within class gifts to issue, children, descendants and the like, unless expressly provided to the contrary does not affect this will since the testatrix died on November 15, 1963, prior to its effective date of March 1, 1964 (L. 1963, chs. 310, 406).
If the extraneous evidence relating to the testatrix’ friendly regard for the respondents be considered in support of their attempt to overcome the normal conclusion flowing from the use of the word “ children ”, there is, nevertheless, significant and unquestioned admissible evidence to the contrary in the form of the prior will and codicils. While these were introduced by the respondents themselves to indicate the testatrix’ benevolent intentions toward them, the complete omission of any reference to the adopted children in the last will speaks just as eloquently as any explicit reference. In Matter of Dudley (168 Misc. 695) the court held the term “descendants” did not include an adopted child where the decedent was an attorney and presumably employed the term in a discriminating fashion as a word of art. That the testatrix here was conversant with the problem of inclusion and exclusion of adopted children is amply evidenced by her prior will and codicils. Her use of the term “ children ” therefore must be presumed to have been employed in a discriminating fashion restricting it to its normal and usual meaning.
While resort to the declarations made by the testatrix prior to her execution of the will, in the court’s opinion, are unnecessary for its determination, Page on Wills (Bowe-Parker Rev.) (vol. 4, § 32.9, p. 274) makes a clear distinction between direct statements of intention which are generally excluded and declarations which “tend to show the testator’s attitude toward a person claiming under the will ”. Cited in the footnote to that statement is the case of Trowbridge v. Trowbridge (127 Conn. *923 469) where the court admitted statements by the testator to a secretary in connection with a proposed draft of his will that an adopted child of his son should not take. At pages 474 and 475 of that case the court said: “ This testimony was admitted for the purpose of showing the testator’s attitude toward Peter as an adopted child * * # The testimony in question here did not seek to give effect to an intention which does not find expression in the will, but to show the testator’s attitude toward the adoption of Peter.” (See, also, Davids, N. Y. Law of Wills, §§ 484, 485, 486, 488.)
Accordingly the motion to strike Mr. McGorry’s testimony of the facts and circumstances surrounding the execution of the will is denied.
The court holds that the term “ children ” employed in article “ Fourteenth: (c) ” of the will refers to the natural children of James B. Bicks, deceased, to the exclusion of his adopted children.