Robert B. McEwan, by his last will and testament, among other bequests, gave to his son Robert B. McEwan, Jr., certain shares of stock. His residuary estate he devised and bequeathed:
"One-third thereof to my wife, Mary Bradley McEwan. Two-thirds thereof (or the entire residuary estate, in case my said wife pre-deceases me), to my three children, Robert Bruce McEwan, Jr., Grace McEwan Lang and Florence McEwan Porter, to be divided equally among them share and share alike; the child or children of any child of mine who pre-deceases me, leaving issue, to takeper stirpes the share of their deceased parent, in such distribution. In case any of my said children shall die, before me, without issue, then such part or portion shall be divided equally among my surviving children or their issue, per stirpes
and not per capita, as above provided."
The will bears date October 23d 1929. A month earlier, September 25th, 1929, testator's son Robert adopted, pursuant *Page 141 
to our statute, two children, Ellerton James McEwan and Thomas Johnson McEwan. Testator, when he made his will, was fully aware of the adoption. The son Robert died in the lifetime of his father, leaving no children other than the two whom he had adopted.
The first question is whether the adopted children take the specific legacy of corporate stock or whether the gift lapsed. The statute of wills provides that a legacy to a son of testator shall not lapse when the legatee shall, during the life of the testator, die leaving "any child or any descendant of a child" surviving the testator; but that the legacy shall vest in the child or descendant. R.S. 3:2-18.
If adopted children of a legatee come within the section, then Ellerton and Thomas take the shares of stock, otherwise not. Our statute states the effect of a decree of adoption.
R.S. 9:3-9. "Upon the entry of a decree of adoption, the parents of the child, if living, shall be divested of all legal rights and obligations due from them to the child, or from the child to them; and the child shall be free from all legal obligations of obedience and maintenance on the part of the child, as if the child had been born to them in lawful wedlock; and the child shall be invested with every legal right; privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or the distribution of personal estate, on the death of such adopting parent or parents, as if born to them in lawful wedlock; subject, however, to the limitations and restrictions hereinafter in this section set forth.
"The adopted child shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the collateral kindred of such adopting parent or parents by right of representation."
The late Chief-Justice Gummere, considering a closely related question, said that the act concerning wills, the statute of descents and the statute of distribution, and the act for the adoption of minor children, are statutes in pari materia and must be taken and construed together as one system.
"Applying this rule, we are of opinion that the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which, by the act concerning wills, the statute of descents, and the *Page 142 
statute of distribution, had been conferred upon children born in wedlock; that is to say, to place them in the same position as if they had been natural born children of the decedent, so far as those statutes are concerned — to substitute the lawful children of the decedent, no matter what the source of their origin, in the place of those born of his body. To give this legislative purpose its full significance the meaning of the words `child,' `children' and `issue' wherever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be considered to have been enlarged so as to include adopted as well as natural born children within their scope." In re Book, 90 N.J. Eq. 549.
The precise question there before the court arose under what is now R.S. 3:2-15, which provides that a will made when a testator has no issue living, shall be void if, at his death, he leaves a child or issue. The court held that an adopted child was "issue" within the section so that where a testator had an adopted child but no other issue when he made his will and thereafter a child was born to him, the will was not void.
In re Alter, 92 N.J. Eq. 415, is complementary to the BookCase. Testator who had no children when he made his will, thereafter adopted a child. Vice-Chancellor Foster held that his will thereupon became void.
These decisions go upon the view that the terms "children" and "issue" in the pertinent statutes, when used with relation to the testator or intestate, include adopted as well as natural born children. Smallwood v. Smallwood, 121 N.J. Eq. 126, goes further and includes adopted children in the class of "children" of a son of the testator. Vice-Chancellor Sooy there held that an adopted child of a legatee is a "child" within the meaning ofR.S. 3:2-18 and that a bequest by a father to his son, who dies in testator's lifetime, leaving the adopted child but no other children, does not lapse but vests in the adopted child. This decision is supported by the last clause quoted above from the Adoption act — declaring that the adopted child shall not be capable of taking by right of representation property coming from collateral kindred *Page 143 
of the adopting parent. Expressio unius est exclusio alterius.
Representing his adopting parent, the adopted child can take from the ancestor of the parent.
Robert's adopted children are entitled to the legacy of the corporate shares.
The next question is whether they take under the residuary clause of the will. Testator, by his will, directed that if any child of his should predecease him, leaving issue, then the child or children of such child should take the parent's share. Did he intend to include the adopted children when he spoke of "the child or children" of any child of his, or when he spoke of "issue" of such child of his?
It will be observed the question is one of construction of the will, not interpretation of the statute. The statute enters into the problem only as one of the circumstances surrounding the testator which may aid us in reading his mind. There are a considerable number of cases in our own reports and the reports of other states which deal with the claims of adopted children under wills. From them may be deduced that when a will contains a provision for the testator's own "children," a child adopted by him either before or after making the will is presumed to be within the class so described since the testator is under an obligation to regard the relationship as that of parent and child.
The courts of most of our sister states held that when a will contains a provision for the "children" of a person other than testator and that person adopts a child after the will is made, the adopted child does not take. For the testator is under no obligation to the child and is not supposed to have foreseen the adoption. As Vice-Chancellor Backes put it, "Adoption is an artificial method of acquiring an heir; it is the unexpected way." Dulfon v. Keasby, 111 N.J. Eq. 223. I believe this is the rule in New Jersey. Trenton Trust Co. v. Gane, 125 N.J. Eq. 389,411; Fidelity Union Trust Co. v. Hall, 125 N.J. Eq. 419.
See, however, Haver v. Herder, 96 N.J. Eq. 554, which will be considered a little later.
When testamentary provision is made for the "children" or "issue" of a person other than testator and that person has adopted a child and testator knows of the adoption when *Page 144 
he makes the will, what is the rule? Undoubtedly, the position of the child is stronger than if he were adopted after the will had been executed. To some extent the decisions turn on the language of the statute by which the child was adopted, although the fundamental question is always the intent of the testator and courts strive by viewing the will as a whole and studying the surrounding circumstances to discover whether or not testator meant to benefit the adopted child.
In Maine an adopted child is not included in the gift to the class unless other language in the will indicates an intention to include him. In re Woodcock (Me.), 68 Atl. Rep. 821.
Likewise in Pennsylvania, until the rule was changed by statute.In re Yates (Pa.), 126 Atl. Rep. 254. On the other hand, in Indiana and Illinois, under statutes much like our own, an adopted child takes under a gift to "children." Bray v. Miles
(Ind.), 54 N.E. Rep. 446; 55 N.E. Rep. 510; Munie v.Gruenewald (Ill.), 124 N.E. Rep. 605. In Connecticut, an adopted child takes as "issue," but the statute is somewhat broader than ours in that the adopted child is given the right of inheriting "from his adopting parents or their relatives the same as though it were the natural child of such adopting parents." Mooney v. Tolles (Conn.), 149 Atl. Rep. 515. In Rhode Island, it has been held that an adopted child takes a gift to "issue" even when adopted after the will was made. In reOlney (R.I.), 63 Atl. Rep. 956. See, however, Smith v.Bradford (R.I.), 154 Atl. Rep. 272.
Adopted children were excluded in Eureka Life Insurance Co.
v. Geis (Md.), 88 Atl. Rep. 158, and Brown v. Wright
(Mass.), 80 N.E. Rep. 612. But the statutes impliedly required such a decision. In New York Life Insurance, c., v.Veile (N.Y.), 55 N.E. Rep. 311, an adopted child was not included in a gift to "living issue" of testator's daughter but the result was reached from a consideration of other parts of the will so that no general rule can be drawn from this case.
We now return to Haver v. Herder, supra, which dealt with a devise to a son for life, remainder to "his legal heirs." After testator's death, the son adopted a child who took the *Page 145 
remainder under the rule which Vice-Chancellor Buchanan formulated.
"That where a testator, by a will executed and probated during the existence of our statute as to adoption, devises property to a class designated as `heirs,' `lawful heirs' or `legal heirs' (in cases where prior to the statute of adoption, such words would have been held to mean `children' or `children and/or the children of deceased children'), he must be deemed, in the absence of evidence to the contrary elsewhere in the will or surrounding circumstances, to have intended to include within such class children adopted pursuant to such statute, as well as natural born children or grandchildren. (I have not included the word `issue,' because that might, perhaps, fairly be taken to mean `heirs of the body,' under the express exception provided by the statute, to wit, that an adopted child shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents.)"
This case was apparently accepted by Vice-Chancellor Backes inDulfon v. Keasbey, supra:
"Where the testamentary intention is indefinite or obscure, an adopted child may take under it if his status answers the description of the will. The statutory system supplies the intention; he takes by designation of the system. That was the situation in Haver v. Herder."
Undoubtedly the decision in Haver v. Herder would have been the same if testator had used the word "children" instead of "heirs," or if he had written "issue," except for the doubt arising from the proviso in the Adoption act. I have concluded that the proviso does not justify excluding adopted children from a class described as "issue."
"The adopted child shall not be capable of taking property expressly limited to the heirs of the body or the adopting parent or parents."
The language is technical. If estates tail existed under our law, the meaning would be clear for a limitation to the heirs of the body created a fee tail under the Statute de Donis. But long before our legislature first passed the Adoption statute, it had enacted that every conveyance or devise which, *Page 146 
under the old law, would have vested an estate in fee tail in the grantee or devisee, should vest in him an estate for life only and upon his death, the land should go to his children in fee.Comp. Stat. 1921 § 11. The life estate so created by the legislature was not an ordinary life estate in all respects, but the wife or husband of the life tenant has dower or curtesy in the lands. If our approach to the problem is correct, then the clause of the Adoption act under consideration means only that an adopted child is ineligible to take the fee-simple which, by operation of law, springs from the attempt to vest an estate tail in the adopting parent. The act regulates descents and does not state a canon for the interpretation of wills. Observe that the statute declares the child "shall not be capable of taking;" it does not say that a will shall be construed to exclude the child. Again, it concerns only remainders, not estates vesting immediately in possession.
Our legislature first passed an Adoption act in 1877, P.L.1877 p. 123. Section 4 states the effect of the adoption and contains the same proviso now under discussion. A like provision is found in the statutes of a number of other states. While I have not traced the early history of these statutes with care, I have found that the Massachusetts act which was adopted at least as early as 1865, provides that the adopted child "shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." (Note the word "lineal" which our legislature omitted.) We may say that this part of the New Jersey statute was taken from the Massachusetts act or that they both had a common source. The Supreme Judicial Court of Massachusetts in Sewall
v. Roberts, 115 Mass. 262, 267, said:
"The term `heir of the body' is a well established technical term with which the words `children' or `issue' or `lawful issue' are not synonymous. The rule of construction enjoined by our statutes is that technical words or phrases which have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and *Page 147 
appropriate meaning, unless it is inconsistent with the manifest intent of the legislature and repugnant to the context. Gen. St.C. 3 § 7. The language of the statute shows that the legislature intended to use the phrase `heirs of the body or bodies' in its primary technical sense. The terms of the settlement (in the suit before the court) do not limit the estate expressly `to the heirs of the body' of Robert; and the terms therein used `child or children,' `issue' and `lawful issue,' are not equivalent terms and do not lead to the same construction and legal result as would be reached if the estate was in direct words limited to the heirs of his body."
This case was decided in 1874, three years before our legislature acted. It may be noted that estates tail were still recognized in Massachusetts at that time — and perhaps they still are — although the entail could be barred by the deed of the tenant in possession or by execution against him. Holland v.Cruft, 3 Gray 162; Combs v. Anderson, 138 Mass. 376.
I am satisfied that the clause in R.S. 9:3-9 which pronounces an adopted child incapable of taking property expressly limited to the heirs of the body of the adopting parent, should be technically construed; that it does not forbid the child from taking property bequeathed or devised to the "issue" of the adopting parent, and that it does not furnish a guide for the construction of wills.
So we return to the question of the testator's intention.Munie v. Gruenewald, supra, appears to me a safe guide. When a testator knows that his son has taken into his home an infant and adopted him and given him his name, and the testator, by a will thereafter executed, makes a class gift to the children or issue of his son, it should be presumed in the absence of contrary indications, that he meant to include the adopted child within the class. The testator accepts the situation and relationship which the adopting parents have created. Counsel stress the difference between the word "children" and the term "issue," but when we speak of parent and child or of the child of a particular person, we generally mean a child naturally born to that person, just as much as when we use the word "issue." Childen are issue of the first *Page 148 
generation. I conclude that the adopted children of Robert B. McEwan, Jr., are entitled to share in the residuary estate.
Appellants contend that the Adoption act, in so far as it affects the gift of the shares of stock, is unconstitutional. No authorities are cited, and no persuasive reasons are advanced. A like attack was unsuccessful in Sewall v. Roberts, supra. The statute impairs no vested right, and violates no principle of constitutional law.
 The decree of the Orphans Court will be affirmed. *Page 149