In the Matter of the Estate of WILBUR D. ELLIS, Deceased.

Surrogate's Court, New York County, February 11, 1942.

*Putney, Twombly & Hall*, for the petitioners.

*Root, Clark, Buckner & Ballantine* [*John M. Harlan* of counsel], for Abbie Elizabeth Wolfe Eyth, respondent.

*Field & Field* [*Reginald Field* of counsel], for Marcus Gunn and others, respondents.

Foley, S. A decree settling the account of the executors in this accounting proceeding was signed on December 22, 1941. It reserved for determination by supplemental decree certain questions of construction and instruction.

The testator died on August 22, 1940. He left a will dated November 16, 1939, wherein, after providing for certain specific and pecuniary legacies, he gave one-half of his residuary estate to his wife if she survived him. The other one-half he disposed of as follows: " * * * I give, devise and bequeath the other one-half of the said rest, residue and remainder of my property to those of my first cousins who are living at the time of my death, and to the children of any of my first cousins who shall have died before I do, to be divided among them, *per stirpes* and not *per capita*, that is to say, the children of any deceased cousin shall receive only the share which their parent would have received if he or she, as the case may be, had survived me * * *. By first cousins I mean only those persons who are related to me by blood either on my father's or my mother's side."

The testator was survived by his wife and certain first cousins, children of first cousins and grandchildren of first cousins.

(1) There is presented for determination the question as to whether Abbie Elizabeth Wolfe Eyth, an adopted daughter of Grace Harriet Wolfe, a first cousin by blood of the testator, is entitled to share in his residuary estate under the above-quoted provisions of the will. Mrs. Eyth was legally adopted by her foster mother on June 28, 1909. The foster mother died on August 29, 1927, long before the execution of the testator's will At the date of the will and for some time prior thereto, the testator knew that Mrs. Eyth

was an adopted child of his first cousin. He also knew that her foster mother had died. Counsel for Mrs. Eyth contend that as a child, duly adopted, of a deceased first cousin, she was made a beneficiary by the testator by description with the same effect as if he had specifically named her in his will. They urge that *Matter of Horn* (256 N. Y. 294) is controlling authority for this contention.

*Matter of Horn*, while similar, is not applicable to the situation here. The courts lean toward a liberal interpretation of wills as affecting the rights of an adopted child. (*Matter of Walter*, 270 N. Y 201; *Matter of Horn, supra; Bourne* v. *Dorney*, 184 App. Div. 476; affd., 227 N. Y. 641; *Matter of Horvath*, 155 Misc. 734; *Matter of Mawhinney*, 146 id. 30.) They will not strain, however, to bring an adopted child within the benefits conferred where indication to the contrary is clearly manifested in the will. In the present case the test is not the status of the adopted child at law, but the intention of the maker of the will and the meaning of the language used. (*Matter of Battell*, 286 N. Y. 97; *Morton* v. *American Security & Trust Co.*, 251 App. Div. 31; affd., 276 N. Y. 475; *Matter of Chalmers*, 264 id. 239; *Matter of Watson*, 262 id. 284.) The testator fixed the persons entitled to share as his first cousins living at the time of his death and " the children of any of my first cousins who shall have died before I do." He defined first cousins as " only those persons who are related to me by blood either on my father's or my mother's side." In the light of his own words, it is obvious that the testator intended to confine the distribution of his estate solely to blood relations. It is inconceivable that he could have intended to include an adopted child of a first cousin, wholly unrelated to him by blood, as a beneficiary of his estate, and at the same time expressly limit the primary class of takers to relatives who were of the blood. I accordingly hold that under the language of the will the adopted child, Mrs. Eyth, is not entitled to share in the residuary estate.

(2) The further question of construction raised is whether " grandchildren " of deceased first cousins of the testator are included within the gift to " children " of deceased first cousins under the terms of the will. I hold that they are not included. The uniform rule is that where a testator speaks of children in general terms he does not intend to include grandchildren. The term " children " is never construed to include grandchildren or more remote descendants, unless there is something in the will to show that the word was used in a broader sense. (*Matter of Schaufele*, 252 N. Y. 65; *Matter of Pulis*, 220 id. 196; *Matter of King*, 217 id. 358; *Pimel* v. *Betjemann*, 183 id. 194; *Matter of Phipard*, 182 App. Div. 357; *Matter of Friend*, 164 Misc. 373; affd., 253 App. Div. 801.) It is

urged that the use of the words "*per stirpes* and not *per capita*" in the will is significant as indicating an intention that the testator desired the distribution of his estate to go beyond the children of first cousins and into the next generation, *i. e.*, the grandchildren of first cousins. The use of these words, however, merely prevented a *per capita* distribution among all of the children of deceased first cousins of the testator. It had no effect upon the restrictive meaning of the word "children." (*Matter of Schaufele*, 252 N. Y. 65; *Matter of Montgomery*, 177 App. Div. 799.) If the testator intended that the word "children" should receive a wider significance than it naturally implies, he has failed to indicate that intent in unmistakable language in the provisions of the will. It must, therefore, be held that the word was employed in its primary and literal meaning to denote only the immediate offspring of deceased first cousins. The grandchildren of deceased first cousins have no interest whatsoever in the estate of the testator.

(3) The executors request instructions in respect of the claim of Gertrude Gunn to a deposit of $5,145.46 in the Emigrant Industrial Savings Bank. At the death of the testator there was found among his effects a bank book of that bank entitled "In account with W. Dixon Ellis for Gertrude Gunn." Although the words "in trust" do not appear in the title of the account, there can be no doubt from the form of the account that the deposit was made for the benefit of Gertrude Gunn. It thus comes clearly within the rule in *Matter of Totten* (179 N. Y. 112). It was not necessary that the beneficiary should have had knowledge of the account or that delivery of the bank book should have been made to her in order to entitle her to the proceeds at the death of the depositor. (Banking Law, § 239, subd. 2; *Marine Midland Trust Co. of Binghamton* v. *Stanford*, 256 App. Div. 26; affd., 281 N. Y. 760.) The moneys in the account are, therefore, determined to be payable to Gertrude Gunn.

Submit supplemental decree on notice construing the will and directing payment of the proceeds of the bank account accordingly.