**Nancy Lee CONVILLE, Plaintiff in Error,**

**v.**

**Mrs. Wilbur BAKKE et al., Defendants in Error.**

**Esther Irene KEMP, Cross-Plaintiff in Error,**

**v.**

**Mrs. Wilbur BAKKE et al., Cross-Defendants in Error.**

**Betty Lou WAUGH, Cross-Plaintiff in Error,**

**v.**

**Mrs. Wilbur BAKKE et al., Cross-Defendants in Error.**

**No. 39947.**

Supreme Court of Oklahoma.

May 12, 1964.

Rehearing Denied March 2, 1965.

[redacted]

Martin, Logan, Moyers, Martin & Conway, and J. Jerry Dickman, Tulsa, for plaintiff in error.

Conner, Winters, Randolph & Ballaine, and John S. Athens, Tulsa, for cross-plaintiff in error.

Boatman, Pugsley & Boatman, Okmulgee, and Horsley, Epton & Culp, Wewoka, and Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for defendants in error and cross-defendants in error.

BERRY, Justice.

E. T. Noble and Coral L. Wright were married in 1903, and thereafter lived as husband and wife until E. T. Noble's death on April 10, 1940. On March 12, 1921, the

couple adopted an infant girl in Dallas, Texas. This child was known as Nancy Lee Noble and is the Nancy Lee Conville involved in the present appeal.

On September 25, 1939, E. T. Noble, hereinafter referred to as the testator, made, executed and published his last will and testament. Therein, after numerous bequests and devises of no importance herein, testator disposed of the remainder of a substantial estate under provisions of his will in the following manner:

"VII

"All the rest and residue of my estate, both real, personal and mixed, I give, devise and bequeath unto my beloved wife, Coral L. Noble, for her life time, with power to manage and control such estate during her life time, and if deemed advisable, to sell and dispose of any or all property of the said estate, and to reinvest the proceeds from such sale in other properties and to use all the income and such part of the principal of the estate as she may desire for her support and maintenance.

"/s/ E. T. Noble

"VIII

"At the date of the death of my beloved wife, Coral L. Noble, I give, devise and bequeath all the rest and residue of my estate, remaining at that time, both real and personal, including all of the principal and unexpended income therefrom, and including any properties which may have been acquired by my said wife from the income or sale of the properties herein bequeathed to her, to the following persons, to-wit:

"A. One-third, I give, devise and bequeath to the heirs of the father of my wife, Coral L. Noble, said heirs to take by right of representation; such heirs to be determined as of the date of the death of my wife, Coral L. Noble.

"B. One-third, I give, devise and bequeath to the heirs of my father, Aaron W. Noble, deceased, said heirs to take by right of representation; such heirs to be determined as of the death of my wife, Coral L. Noble. Provided, however, that if my nephews, George T. Noble and William N. Gibson, and my niece, Genevieve Long, shall be living on said date, they shall take per capita.

"C. The remaining one-third I give, devise and bequeath to my beloved daughter, Nancy Lee Noble.

"D. In the event my daughter, Nancy Lee Noble shall predecease my wife, Coral L. Noble, but shall leave issue or lineal descendents, then all such portions of my estate as she would take if living at such date, shall be distributed to such lineal descendants by right of representation.

"E. In the event my daughter, Nancy Lee Noble, shall predecease my wife, Coral L. Noble, but shall leave no issue surviving her, then the portion of my estate to which she would have been entitled, if living at the time of the death of my wife, Coral L. Noble, shall be distributed as follows: One-half in value thereof to the heirs of the father of my wife, Coral L. Noble, said heirs to take by right of representation; one-half in value thereof to the heirs of my father, Aaron W. Noble, said heirs to take by right of representation. Provided, however, that if my nephews, George T. Noble and William N. Gibson, and my niece, Genevieve Long shall all be living on said date, they shall take per capita.

\* \* \* \* \* \*

"/s/ E. T. Noble."

Testator died April 10, 1940, and this will was admitted to probate and, due to the terms of the will and varied nature of property involved, remained under administration for more than eight years. A county court determination as to the nature and extent of the estate acquired by the widow under terms of the will was contested by certain interested relatives. Upon

appeal to the district court the order of the court approving the final account, ordering distribution and discharging the executrix was affirmed. Upon appeal to this Court the judgment of the District Court was affirmed. See Noble et al. v. Noble, 205 Okl. 91, 235 P.2d 670, 26 A.L.R.2d 1200. Following such affirmance, the mandate was spread of record and the district court then ordered the cause remitted to the county court. On July 12, 1948, the county court entered an order approving the final account, distributing the estate and discharging the executrix.

On January 23, 1961, Nancy Lee Noble Conville filed petition for appointment as administratrix with will annexed. The petition set forth the will provisions above quoted, death of Coral L. Noble on August 3, 1959, and the names and addresses of all devisees of the residue of the Noble estate of the class designated in the quoted will provisions. Petitioner further alleged the order of July 12, 1948 adjudged that testator left surviving as his only heirs at law his wife and the petitioner; that as testator's sole surviving heir petitioner was entitled to appointment as administratrix with will annexed.

Thereafter, George T. Noble, a nephew of testator, filed answer admitting the allegations of plaintiff's petition, but alleged he was one of the classes of heirs mentioned in Subdivision 3B of the will; by reason of special training and familiarity with properties of the estate he could facilitate closing of the estate; and being of a class entitled to appointment as administrator, it was within the court's discretion to appoint applicant as co-administrator. Following hearing, the county court entered an order on September 1, 1959, finding the court's jurisdiction to determine the cause, necessity for issuance of letters of administration and determination of other matters including the names and proportions of those entitled to inherit. The court then ordered appointment of petitioner and George T. Noble as administrators of the estate.

Nancy Lee Conville filed a petition alleging prior distribution to her of a portion of the estate under VIII-C of the will; that other will provisions devised and bequeathed one-third of the estate to the heirs of the father of Coral L. Noble (William Wright) and one-third to the heirs of Aaron Noble, father of testator; that property was bequeathed to petitioner as testator's "beloved daughter", and the order adjudged and fixed the status of Coral Noble and petitioner as his only heirs at law. An alternative ground for establishing petitioner's status as an heir of Aaron Noble was alleged by reason of petitioner's adoption in the State of Texas, together with a subsequent adoption proceeding in the Okmulgee County Court and a concurrent holding out of petitioner as the daughter of testator and Coral L. Noble; that on August 3, 1959, testator was a deceased child of Aaron Noble and her mother was a deceased child of William Wright.

At this time a petition was filed in behalf of Irene Kemp, nee Esther Irene Wallace, and Betty Lou Waugh, nee Betty Lou Wallace, alleging adoption of Betty Lou on December 13, 1930, under a decree of adoption entered by the Juvenile Division of the Circuit Court of Buchanan County, Missouri, and the adoption of Esther Irene in the same court on June 3, 1932 by Emma Noble Wallace and Milam B. Wallace, her husband. Petitioners alleged they were devisees and legatees of testator under the will filed for probate under Clause VIII-B (above quoted) of the will, since Emma G. Wallace was an heir of Aaron Noble and permitted to take by right of representation, determinable as of August 3, 1959, the date of Coral L. Noble's death. George T. Noble filed answer putting in issue the right of these parties to take as legatees under the will.

All other interested parties thereupon filed objections to the petitions for distribution, therein denying, individually and collectively, that petitioners were entitled to take any portion of the estates as asserted in the petitions, and likewise asking dis-

tribution to the exclusion of petitioners who claimed as adopted children. Petitioner filed response asserting estoppel of any party to question the validity of her adoption.

All matters were heard by the county court who entered an order allowing final account and report of administrators, determining heirs entitled to estate and fixing distribution date as January 28, 1961. Insofar as is of concern herein the judgment entered determined that Nancy Conville, Irene Kemp and Betty Waugh were not heirs of the ancestors named by testator. Nancy Conville filed objection to the court's failure to order distribution to her (¾5ths) out of the value of the estate, as an heir of Aaron Noble, and (4⁄72nds) of the value of William Wright's estate as an heir, decreasing the shares of the other distributees accordingly. Both Irene Kemp and Betty Waugh filed objections to the court's refusal to decree to each of them a ¾0ths share of the value of the estate as an heir of Aaron Noble, decreasing the shares of the other distributees accordingly. In due time the named parties appealed to the District Court where the matter was tried de novo on May 3, 1961.

Trial in the district court resulted in a judgment affirming the order and decree of the county court. In rendering judgment the trial court specifically found testator's will disposed of his property exactly in the manner intended; that the residuary estate remaining upon termination of the life estate granted the surviving spouse went in the manner and proportions set out in the will; that petitioner took only under the will and not as an heir of either named ancestor; that neither of the nieces (petitioners Kemp and Waugh) were heirs of testator's father. The cause was remanded to the county court with directions that immediate distribution be made in accordance with the terms of the decree determining those entitled to share in the estate.

Motions for new trial were overruled and petitioner Conville appealed from the judgment. A separate appeal was perfected in behalf of claimants Kemp and Waugh. These appeals were consolidated by appropriate order to facilitate presentation in this Court. The issues on appeal have been presented most capably by counsel for the respective parties. Since the determinative issues are equally applicable to all, further reference to the parties as petitioners, or plaintiffs, whether singular or plural, generally may be understood to include both the adopted daughter and the two adopted nieces.

Numerous contentions are advanced by the parties and thoroughly presented, as are ancillary matters bearing upon the principal contentions. Extended and substantial arguments are advanced in support of each matter or issue, including collateral arguments touching upon various phases of the case. We believe that proper determination of the inquiries hereinafter enumerated provides a sound basis for disposition of the case. Three questions of paramount consideration are involved in this appeal. First, were the plaintiffs (petitioners) the legally adopted children of the putative adoptive parents? Second, did the provisions of the will involved plainly disclose testator's intention to exclude the possibility of the adopted children from sharing in the estate as heirs? Third, did the adoption statutes in effect at the time of testator's death control, or were plaintiffs' rights to be determined under the law in effect at the date of Coral Noble's death?

The claim of petitioner rests upon the contention that she takes as an heir of the father of each of her adoptive parents. The other petitioners base their right to participate in distribution of the estate upon the fact that they were the adopted daughters of Emma Noble Wallace, who was an heir of Aaron Noble. It is urged on appeal that although the attempted adoptions might have been effective between the plaintiffs and their adoptive parents, the adoption proceedings were fatally defective and insufficient to constitute a legal adoption.

To establish the basis for their claim of heirship, the petitioners Waugh and Kemp plead their legal adoption in the State of Missouri, and introduced into evidence authenticated copies of documents filed in the adoption proceedings before the Juvenile Division of the Circuit Court of Buchanan County, State of Missouri. From this record it appears that Ruby Pearl Benfield, now Betty Lou Waugh, was adopted by Emma Noble Wallace and Milam B. Wallace on December 13, 1930, by order of the above court. The adoption decree changed the adoptive child's name to Betty Lou Wallace and specifically provided such child should be capable of inheriting from the adoptive parents as fully as though born in wedlock. A like decree was entered by the same court on June 3, 1932, whereby Eddy Louise Benfield was adopted by Emma Noble Wallace and her husband under the name of Esther Irene Wallace.

It is contended here that plaintiffs were not legally adopted under the Missouri law. Summarized, the argument is that one claiming to be adopted has the burden of proof and the facts of adoption must be proved, including consent of the natural parents, and lack of notice to the natural parent is a jurisdictional element under Oklahoma law. Defendants then assert the absence of proof tending to show notice of the adoption proceedings brought home to the natural father. Thus, defendants conclude, absence of notice or consent by the natural parent, coupled with lack of allegation or finding of abandonment by the adopting court requires the conclusion, under the record herein, that custody of plaintiffs was wrongfully acquired by the Children's Home Society and their adoption therefore was illegal. The record herein affirmatively discloses that care and custody of both named plaintiffs was awarded the Children's Home Society of Missouri on September 21, 1928 by the Juvenile Court's order.

Aside from questions which might be raised relating to the full faith and credit to be accorded an adoption decree of a sister state, of any right to assert invalidity of an adoption by collateral attack after thirty years or of laches inhering in such circumstances, we are of the opinion the claimed illegality of the Missouri adoptions is without substantial merit. As concerns the adoption of Esther Irene Wallace, the statute in effect at the time, Missouri Rev.Stat.1929, Sec. 14074,[1] permitted adoption without consent of the natural parent where the adoptive child was 12 years of age or older and consented in writing to the adoption. This record discloses this plaintiff's written request for, and consent to, her own adoption by Emma Noble Wallace and her husband. The record affirmatively discloses the minor *was* more than 12 years old at the time of adoption. The legality of this plaintiff's adoption is not open to attack under this record.

We are of the further opinion the adoption of plaintiff, Betty Lou Waugh, was valid, and is not subject to attack herein for reasons hereafter set forth. Missouri law in effect at the date of her adoption, Revised Statutes 1929, Sec. 14074, provided that a parent's consent to adoption was not required if the parent were insane, imprisoned under a sentence not expiring until two years following filing of the petition; " * * * or if he or she has willfully abandoned the child or neglected to provide proper care and maintenance for the two years last preceding such date."

The succeeding section, 14075, provided that an institution to which a minor's care had been entrusted could give consent to adoption when (1) the child had been abandoned for a period of two years; (2) when the institution received a child which thereafter had been abandoned by the parents for two years. Section 14076 then provided that if written consent to the adoption were not filed the court shall order notice by personal service or by publica-

1. V.A.M.S. §§ 453.030–453.050.

tion. Then, if the person whose consent was required failed to appear, the court may act upon the petition for adoption and the judgment shall be binding upon persons so served.

The argument is that the exception for requiring the natural parents' consent applies only to children in custody of an orphanage by abandonment and that there was no allegation or finding by the court that abandonment was the basis of the Society's custody. Hence either personal service or publication service was required and since the decree does not reflect service upon the parent in either manner, the decree of adoption entered upon consent of the Children's Home Society was void. While such argument may be academically correct, we do not believe same can be considered as controlling under present circumstances.

Following the death of their mother when Irene Kemp was approximately eight years old and Betty Wallace was about two years old, the girls lived with an uncle for about a year because their father abandoned them. Thereafter they were placed in the Children's Home from which the adoption in question was accomplished. Esther was 16 years old and Betty was six when they were adopted by the Wallaces.

Section 14075 of the statutes above mentioned, specifically allowed an institution having custody to consent to adoption when such institution received for care and custody a minor child which thereafter was abandoned by the natural parents for a period of two years. The evidence of record is sufficient to establish that the plaintiffs were abandoned, although the adopting court neglected to make this specific finding.

In Robertson v. Cornett, 359 Mo. 1156, 225 S.W.2d 780, an order of adoption was attacked upon the ground of lack of the parents' consent, and that although notice by publication was ordered, the court failed to make a specific finding that the parents could not be found within the state. In denying this contention and holding the adoption valid, the Missouri court declared that the two-year notice provision was for the purpose of safeguarding rights of natural parents. And, adoption statutes are construed strongly in favor of natural parents when the controversy is between parents and those seeking to destroy the parental status. The court also said that correct action by the adopting court will be presumed in absence of a showing to the contrary. We are of the opinion that the evidence of abandonment for more than two years following the Home's custody was properly before the court and provided the basis for the adoption although a specific finding to this effect was not included in the order of adoption. Syllabus 5 of the Robertson case, supra, states the rule applicable herein:

> "The adoption statute is strictly construed in favor of rights of natural parents when the controversy is between the natural parents and person seeking to destroy their parental status, but welfare of child is not to be ignored in considering the validity of adoption proceedings."

The next, and related question, involves the legality of the adoption of plaintiff Nancy Lee Conville. The defendants assert that plaintiff's adoption was void under Texas law for a variety of reasons. The argument is that plaintiff's adoption in 1921 under Texas law then existing, required showing of notice and consent and filing of an adoption deed in the county of the adoptive parents' residence. Hence, since the record does not disclose the foregoing matters, the attempted adoption was never completed and therefore is void.

It is unnecessary to prolong the discussion bearing upon this feature of the case. The issue raised and the supporting argument based upon the purported invalidity of the Texas proceedings are not persuasive. We are of the opinion the issue presented is determinable with finality upon the basis of our decisions. The adoption proceedings had in the County Court of Okmulgee County under date of October 26, 1921, recited

the voluntary consent of the surviving parent of the adoptive child. In In re Howard's Estate, 125 Okl. 86, 256 P. 54, Syllabus 1 states:

"Our statute providing for the mode of adoption should be construed with a reasonable degree of liberality, where the adoption has been fully consummated, to the end that the assumed relationship and the intention of the contracting parties be upheld, as against strangers to the proceedings collaterally attacking same."

In the body of the cited case appears the following statement from an early Wyoming case, Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199:

" 'And hence it seems to me that in cases of this kind it is not the duty of the courts to bring the judicial microscope to bear upon the case in order that every slight defect might be enlarged and magnified, so that a reason might be found for declaring invalid an act consummated years before, but rather approach the case with the inclination to uphold such acts, if it is found that there was a substantial compliance with the statute.' "

The foregoing principles have been recognized in a number of cases which are reviewed in Miller v. Combs, 195 Okl. 267, 156 P.2d 811. In this latter case the court quoted at length from the Howard case, supra. In the body of the Combs opinion we again acknowledged, in instances of collateral attack, the principal purpose of the statute is that consent be given, rather than the manner in which it is given. That decision at p. 812 of 156 P.2d states:

" * * * We pointed out that the mother had in fact consented to the adoption and that the adopted child had remained in the custody of the adopting parents without complaint on the part of any person directly interested in the adoption."

■ The petition for adoption recited execution of written consent to the proposed adoption by the surviving parent. The decree of adoption recites the voluntary consent of the surviving parent. There is neither showing nor intimation that the parties to this adoption considered otherwise than that the adoption proceedings had been legally discharged, or that the consent upon which the proceeding was based was regular and sufficient. The propriety and correctness of the county court's action is presumed, absent contrary showing. Such presumption obtains until overcome by proof. Ludwig v. Yancey, Okl., 318 P.2d 450; and Ballinger v. Sarkeys, Okl., 360 P.2d 515.

■ Testator and his wife exerted every possible effort to effect proper, valid adoption of plaintiff. An adoption proceeding was carried out under Texas law. An adoption proceeding was completed in Oklahoma. Plaintiff was given testator's name, reared, educated and treated as the Noble's daughter in all respects and so described and designated under the will in question. Adoption statutes are to be construed liberally in favor of the adopted child. We are not impressed by argument asserting the invalidity of an adoption consummated nearly forty years ago. This is true particularly when invalidity is urged in a collateral attack by those who seek direct benefits by depriving an adopted child of rights which the adoptive parents intended and sought to secure to their child.

■■ Consideration of the second question necessitates attention be given and application made of established principles governing interpretation of wills. Statutes and decided cases require that the testator's intention be ascertained and effect given thereto unless forbidden by law. Such intention must be ascertained from the language of the entire instrument. And, a testamentary disposition to a class which is postponed to a future period includes persons coming within the description before the time to which possession is postponed. See 84 O.S.1961, §§ 1–185.

The trial court's judgment declared that testator's will disposed of his property in

the manner which he intended, and this may be conceded. The problem, however, arises in determining what that intention was in view of the conditions created by the separate clauses and provisions. The residuary estate existing at the death of the wife (Coral Noble) was made the subject of classes of devisees as expressed in the will. One devise, that to the daughter by provision VIII–C established one beneficiary and does not require discussion at this point.

The property comprising the estate settled under terms of this will had been acquired by testator and his wife during married life. Knowledge that his wife had aided materially in amassing their estate was evidenced by testator's expressed intention to provide for her relatives by display of substantial generosity. This same intent is ascertainable from testator's effort to make provision for his own relatives. Having settled the matter in his own mind the testator, a lawyer, took positive steps to accomplish the intended disposition of his affairs. The further intention, to be fair with all intended objects of his bounty, is ascertainable from the method seized upon by testator to avoid any claim or charge of bias or favoritism.

The entire estate was left to his wife for life. Of any residual estate remaining at her demise a one-third part was set over to plaintiff, their adopted daughter. The remainder was to be divided equally between the heirs of testator's father and heirs of the wife's father. However, when the will was made testator was cognizant that some limitation or qualification was required, since his own mother was alive and possibly subject to participating as a forced heir of his father. And, the son of a deceased sister (William N. Gibson) and a son and daughter of a deceased brother (George Noble) would take by right of representation, thereby acquiring a lesser share. Undoubtedly, such considerations impelled testator to provide specifically that the three named should take per capita.

With these matters in mind, testator effectively disposed of the intended portion of his estate by creation of fixed classes of beneficiaries who were to share therein. See Collar et al. v. Mills, 190 Okl. 481, 125 P.2d 197. The necessity for a particular limitation or condition was apparent to testator. Recognizing that the number of the established classes of beneficiaries might be enlarged or diminished before possession was acquired by the remaindermen, testator changed the ordinary rule for determination of those entitled to participate by providing those who were "heirs" within the established classes *should be determined at the date of his wife's death.* That he intended to establish only two classes of beneficiaries is confirmed by a further will provision that if the wife predeceased the testator, this same plan of distribution was to apply.

Text writers and judicial declarations have denominated the interest acquired by such testamentary disposition as a vested remainder. In Simes & Smith, Law of Future Interests, (2nd ed), Sec. 146, appears this statement:

"A remainder limited without words of condition to a class of persons, such as 'children', one or more of whom is in existence and ascertained, is vested, though subject to be divested in part by the coming into existence or ascertainment of other members of the class. This is the typical vested remainder subject to open * * The conclusion that the remainder is vested, and not subject to any condition precedent, is regarded as being based upon the theory that there is a person in being to whom seisin could pass. While the interests of the unborn or unascertained persons can hardly be spoken of as vested in any possible sense of the word, the remainder is said to be vested, since the interest of the ascertained person may be regarded as vested. * * *"

Also see Patton On Titles, Sec. 142; 57 Am.Jur.Wills, Sec. 1256; 33 Am.Jur. Life

Estates, Remainders, Sec. 131 et seq, and particularly Sec. 137; 31 C.J.S. Estates § 69 et seq.; and Epperson v. Bennett, 161 Kan. 298, 167 P.2d 606, 166 A.L.R. 816.

The general rule is that members of the testamentary class are to be determined as of the testator's death and the remainder vests immediately upon death. In this connection defendants urge that wills are governed by the law in effect at the time of the testator's death, and that laws enacted thereafter must be disregarded. See Frost v. Davis, 182 Okl. 593, 79 P.2d 600; and Franklin v. Margay Oil Corp., 194 Okl. 519, 153 P.2d 486. However, a recognized exception depends upon the intent of the testator as expressed in the will. By proper words the testator may fix a subsequent time for determining who are heirs of the class established by the will. See 33 Am.Jur. Life Estates, supra. By the express provision of the will involved, the testator created the classes of "heirs" who were to share in the one-third portion of the residual estate vested in each class. The rule of the cases relied upon by defendants cannot apply under these circumstances.

Having determined the testator intended and did effectively provide for devises to two classes of beneficiaries, it then becomes necessary to determine whether the will involved discloses the testator's intention to exclude adopted children from participating in the estate as heirs under the particular will provision. Here again determination of the inquiry involves consideration of two classes, since it appears that plaintiffs Kemp and Waugh necessarily stand upon a different footing from plaintiff Conville. The argument against petitioners' claims is that a will is governed by the law existing at the time it takes effect, which is at the time of testator's death. This is an expression of the general rule announced in Brock v. Keifer, 59 Okl. 5, 157 P. 88; and Franklin v. Margay Oil Corp., supra. However, this is not an unalterable rule as appears from the following statement from 57 Am.Jur. Wills, Sec. 1273:

"In determining whether statutes in effect at the date of execution of the will or at the time of the testator's death or some subsequent period for the distribution of a class, the testator's intention is to be respected * * * but difficult problems are presented * * * where the testatorial intent is not clear; * * *. Where, however, a gift to 'heirs' * * * takes effect in possession and enjoyment at the termination of an intermediate estate or the happening of a future contingency, the cases appear to reflect two somewhat contradictory tendencies. One group of decisions supports the broad view that the testator must be presumed to have been aware that existing statutes are subject to change and that where he made the membership in the class ascertainable only at an indefinite future time, he must be regarded as having contemplated a change in the controlling laws prior to that time, and hence must be presumed, in the absence of any contrary text in the will, to have intended that the statutes in effect at the time the gift became operative to be those to be resorted to in determining the membership of the class. * * *"

In 139 A.L.R. 1111 is an extensive annotation dealing with the problem of the effect of change of statutory definition where a devise or bequest becomes effective upon termination of the intermediate estate, as concerns what statutory definition of "heirs" or next of kin is to be applied. Therein appears the case of In re Canfield's Estate, 136 Misc. 551, 241 N.Y.S. 364; 256 N.Y. 610, 177 N.E. 161, comprising a situation where a will devised a part of the corpus of a life estate to the heirs at law of the beneficiary following beneficiary's death. The court held that determination of those constituting "heirs" was to be made under the law in effect upon date of beneficiary's death, although the

statutory definition of "heirs" had been changed after execution of will and testator's death. In the body of that opinion it is stated:

"* * * 'Under the established rules of construction the testator is presumed to have known that the distribution directed by him was subject to legislative power to change the inheritance. * * * Here, the class of remaindermen could only be ascertained at the date of the death of the person whose next of kin were to take as remaindermen. Then only did the right of inheritance accrue, and by that date we are to test and measure such right. The statute in force at the latter date must therefore determine the class of beneficiaries.' * * *"

Most of the annotated cases involve changes in law of descent and distribution and resultant changes in definition of such terms as "heirs" or "next of kin". Cited therein are Smith v. Hunter, 86 Ohio St. 106, 99 N.E. 91; In re Kingsbury, 192 App.Div. 206, 182 N.Y.S. 559; 230 N.Y. 580, 130 N.E. 901: and Gilliam v. Guaranty Trust Co., 186 N.Y. 127, 78 N.E. 697, each of which involve a question arising under adoptive statutes. In Smith v. Hunter the Ohio Court aptly pointed out that the statutory meaning of the phrase "heirs at law" had not been changed, it simply meant those who by law might be entitled to succeed to the property. The court also pointed out that validity of the adopted daughter's claim did not depend upon testator having particular intention that funds should pass to adopted child since it was sufficient if the adopted child were a person designated by law as an heir of the testator's daughter. That court also stated that the testator must have understood that laws of descent and distribution have constantly changed throughout the ages.

Many cases from a number of courts deny the exclusion of an adopted child from a testamentary class such as appears in the present case. The basis for the decided cases is as varied as the instances presented. Certain broad rules are admitted, but for present purposes we confine our consideration solely to the cases where the testator is the adopting parent, *or* has specific knowledge of the adoption which occurs prior to execution of the will. Many courts add a rule of construction to the effect that use of language having a connotation of blood, i. e. "children", indicates an intention to exclude adopted children, except where the child is the testator's own. However, use of words defined in statutes of intestate succession, i. e. "heirs" or "next of kin", indicates a testamentary intention to include adopted children. See annotations in 105 A.L.R. 1176; 18 A.L.R. 2d 960; and 43 A.L.R.2d 1183.

As has been pointed out, cases involving adoptions occurring prior to execution of the will are approximately evenly divided as to result. It would be impossible to review and compare the decided cases or to correlate the reasoning upon which the results attained are predicated. Apparently, a factor accorded considerable significance in nearly all cases is the fact that the testator knew and approved of the adoption and regarded and treated the adopted child as a member of the family. When this factor is present, the courts unequivocally declare that a will is to be construed so as to include the adopted child unless language of the instrument or other circumstances disclose a contrary intention.

These principles may be observed in In re Clancy's Estate, 159 Cal.App.2d 216, 323 P.2d 763; In re Heard's Estate, 49 Cal.2d 514, 319 P.2d 637; In re Stanford's Estate, 49 Cal.2d 120, 315 P.2d 681; Ansonia Nat. Bank v. Kunkel, 105 Conn. 744, 136 A. 588; In re McEwan's Estate, 128 N.J. Eq. 140, 15 A.2d 340; Re Upjohn's Will, 304 N.Y. 366, 107 N.E.2d 492; In re Camp's Estate, 6 Misc.2d 593, 161 N.Y.S.2d 252; In re Breese's Estate, 7 Wis.2d 422, 96 N. W.2d 712; and Warren v. Prescott, 84 Me. 483, 24 A. 948, 17 L.R.A. 435. It is noticeable that in the Heard case the California Court quoted at length from the opinion in

Re Upjohn's Will, supra, and specifically acknowledged that in In re Stanford's Estate, supra, the law declared as a matter of policy that an adopted child was to be given the same status as a biological child.

We are of the opinion nothing in the present case tends to show testator intended to exclude the petitioners from participating as heirs within the classes of remaindermen established by the will provisions. Had their exclusion been intended in any event this end could have been accomplished effectively by testator. However, having knowledge of the adoptive status of three persons who possibly could be classed as heirs, testator chose not to take action to provide for their exclusion. This, considered with the fact that testator participated in one adoption and unqualifiedly approved of the other plaintiffs' adoptions and then executed his will with such knowledge, provides sound basis for concluding that testator had no intention of excluding plaintiffs from classification as heirs.

We now must determine whether the adoption statutes in effect at the time of testator's death control or whether plaintiffs' rights were to be determined under the law in effect at the date of Coral Noble's death.

The law in effect upon testator's death (10 O.S.1951, §§ 41–56) denied adopted children the right to inherit from lineal or collateral kindred by right of representation. In Jacobs v. Duncan, 75 Okl. 71, 181 P. 936, it was determined that the law in force at the date of adoption controlled, rather than the law in force at the death of the adopting parent. In the case of In re Captain's Estate, 191 Okl. 463, 130 P.2d 1002, we held that the law intended to make an adopted child a full child so far as adoptive parents were concerned, but not to make such child a full child for purposes of inheritance from lineal or collateral kin. However, we pointed out in the latter decision that adoption and the nature and extent of rightful inheritance by an adopted child are solely for the Legislature to determine.

And, in In re Ware's Estate (Okl.), 348 P.2d 176, which case arose prior to the Uniform Adoption Code, we held that an adoptive child of testatrix's deceased grandchild could not inherit under will providing for devolution to the child of a deceased grandchild by right of representation. But it also is pointed out that when testator's intention is left in doubt then statutes restricting devolution, or bearing upon relationship of testatrix and claimants, come into play in determining the testator's intention.

The statutes and decisions construing and applying same effectively settled the question whether an adopted child could inherit by right of representation. However, the terms of testator's will prevented determination of those who were classified as "heirs" until the date of his wife's death. The effective provisions thus were deferred to an uncertain, future date. But in the period between testator's death and occurrence of the contingency provided in the will the Legislature repealed the existing adoption laws and enacted the Uniform Adoption Act, title of which was as follows:

"AN ACT to provide a code for the adoption of persons, prescribing the conditions and procedure therefor, and the effect of adoption and its annulment; to make uniform the law in relation to adoption and to repeal §§ 41 as amended, 42, 43, 44 as amended, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, and 56, of Title 10, O.S.1951." Laws 1957, p. 22.

The repealing clause provided:

"Repealing Clause. §§ 42, 43, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, and 56 of Title 10, O.S.1951, and §§ 41 and 44, Title 10, O.S.1951, as amended by Chapter 2, Sections 1 and 2, Title 10, Oklahoma Session Laws 1955, are repealed hereby, except as to proceedings terminated or commenced prior to the effective date of this Act."

It is necessary to decide herein whether the "heirs" mentioned in the will were to be ascertained under the law existing at the time of Coral Noble's death, this being the time specified for such determination to be made.

The principal argument against application of the Uniform Adoption Act is that the Act cannot be retroactive, but must be applied prospectively only. Authority for such argument is offered from 95 C.J.S. Wills § 587c. The text statement cannot apply inasmuch as the text acknowledges that a different rule applies where the testator has indicated a contrary intent.

However, defendants also assert that the Legislature provided the Act would not "apply to proceedings terminated or commenced prior" to August 27, 1957, the effective date of the Act. Defendants urge that the quoted language appearing in the repealing clause of the new Act amounted to specific retention of Sec. 52 of the prior adoption laws which precluded an adopted child from inheriting other · than directly from the adoptive parents. By this tenuous reasoning defendants conclude· that the Legislature intended to keep Sec. 52 in force and effect insofar as proceedings terminated or commenced prior to the Uniform Adoption Act.

■ The result of such argument, as pointed out by plaintiffs, would be that the old law would remain effective both as to proceedings commenced or terminated prior to the Act, and also for determining heirs of persons dying after this Act if the person affected had been adopted prior to effective date of the Act. This argument cannot be considered persuasive, particularly in view of the precise nature of the repealing clause contained in the Uniform Act as adopted. Therein it appears that Sec. 52 of the Statutes as amended in 1955 specifically was repealed.

It is generally recognized the present-day tendency is to place adopted children upon the same basis as natural children.

Alexander v. Samuels, 177 Okl. 323, 58 P.2d 878, 105 A.L.R. 1171. This policy is expressed in In re Upjohn's Will, 304 N.Y. 366, 107 N.E.2d 492, at p. 494, in the following language:

" 'Embodied in our adoption statute is the fundamental social concept that the relationship of parent and child, with all the personal and property rights incident to it may be established, independently of blood ties, by operation of law * * *. "In the eye of the law, therefore, adopted children are lineal descendants of their foster parent. They are in the line of descent from him through the command of the statute, the same as if that line had been established by nature." Matter of Cook's Estate, 187 N.Y. 253, 261, 79 N.E. 991, 994. In harmony with · the legislative policy thus expressed, the adoption statute has been most liberally and beneficiently applied. * * " 'Wills, too, must be read and construed in harmony with the legislative policy of placing adopted children on a level with natural born offspring. See Gilliam v. Guaranty Trust Co., 186 N.Y. 127, 138, 78 N.E. 697, 700; Matter of Ellis's Estate, 178 Misc. 491, 492, 34 N.Y.S.2d 884, 885.' " Also see In re Heard's Estate, 49 Cal.2d 514, 319 P.2d 637, at p. 640.

The Legislature, by enactment of the Uniform Adoption Act, 10 O.S.1961, §§ 60.1–60.23, inc., accomplished the following:

1. Determined that validity of any adoption completed or commenced under the prior adoption laws would not be affected by procedural changes under the new Act.

2. Decreed that as a matter of law the validity of any proceeding, including probate proceedings or determination of rights of adopted children as heirs, which had been commenced or completed prior to August 27, 1957, should not be affected by passage of the Act.

■ Had the Legislature intended the Act to operate prospectively only and keep the old law in effect as to persons adopted prior to August 27, 1957, this could have been accomplished by inclusion of an exception limiting the rights of those adopted under the repealed statutes. Defendants' argument would create two systems of inheritance for adopted children. Assuming adoption of a child by testator's sister subsequent to August 27, 1957, this child would inherit as an heir of testator's father whereas plaintiff (Nancy Conville), testator's own adopted daughter, would not be permitted to inherit. We decline to ascribe such purposed intention to an act of the Legislature which plainly evidenced acceptance of the modern, liberal considerations of public policy toward the status of adopted children. The construction to be given the Uniform Adoption Act seems so clear that citation of supporting authority is not required. A construction must be adopted which permits uniform operation of the statute. Such cannot be accomplished under defendants' interpretation of the Act.

■ Without further discussion of other matters presented, we are of the opinion the legislative intention evidenced in passage of the Act is clear. And, proper construction requires that "proceedings" mentioned in the Act includes both adoption proceedings and heirship proceedings. Adoption proceedings begun or final, under the prior law were not affected by the repeal. Probate proceedings were not to be affected by repeal of statutes related to inheritance. 10 O.S.1951, §§ 44 and 61 as amended in 1955. No rights of inheritance were affected, for a right of inheritance does not accrue until intestate death occurs, and descent of a person who died under the old law remained determinable under that law. All rights fixed by decrees entered or probate proceedings pending upon the effective date were excepted.

■ Effectiveness of the Uniform Adoption Act neither removed nor conferred a present right. The Act, applied to the terms of the will specifying the date at which the classes of heirs should be determined, established the petitioners' rights to participate as heirs in distribution of the estate. This was a matter peculiarly within the province of the Legislature. In re Captain's Estate, 191 Okl. 463, 130 P.2d 1002.

Other matters are argued at length by the parties. It is unnecessary to deal separately with these arguments or to discuss the many authorities offered. The matters dealt with heretofore involve the basic issues which are determinative of the case.

The judgment is reversed and the cause remanded with directions that distribution of the residuary estate be ordered in conformity with the views herein expressed.

HALLEY, V. C. J. and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.